Smith & Sholars v. C. S. Fowler et al.

Decided November 3, 1909.

**1.—Principal and Agent—Land Agent—Right to Commissions.**

The owner of land, in the absence of an express agreement to the contrary, has the right to employ as many different agents to sell it as he sees fit, and that one of the agents who first procures a purchaser under the terms of his agency, is the one entitled to the commission.

**2.—Same—Termination of Agency.**

Where the principal employs several agents as brokers, the sale of the land by one of the agents or by the principal terminates the authority of them all, although notice of the sale may not have been given, and the principal will only be liable for a commission to the agent who was the procuring cause of the sale.

**3.—Same—Completion of Sale by Another.**

If brokers have no knowledge of the employment of others, the broker who was the procuring cause of the sale is entitled to his commission even though another broker or the principal takes the matter into his own hands and completes the sale.

**4.—Same.**

An agent may render service in and about a sale of land, such as finding a purchaser who would not otherwise have been found, and yet may fail to consummate a sale, and another may take it up and complete it, and the last one would be entitled to the commissions.

**5.—Interpleader—Adverse Claimants—Practice on Appeal.**

Where a land owner was sued by agents for commissions upon a sale which they claimed to have consummated, and the defendant owner admitted his liability to some one for commissions and paid the money into court, and interpleaded other agents who were claiming said commissions, an objection that the interpleader should not have been allowed, could not be heard for the first time on appeal.

Appeal from the District Court of Nueces County. Tried below before Hon. W. B. Hopkins

*Dougherty & Dougherty,* for appellants.—When a real estate broker, in pursuance of a contract of employment for an agreed compensation, procures a purchaser with whom his principal is satisfied, and who actually contracts for the property at a price satisfactory to the owner, he becomes entitled to his commission. Graves v. Bains, 78 Texas, 94; DeCordova v. Bahn, 74 Texas, 645; Conkling v. Krakauer, 70 Texas, 739; McDonald v. Cabiness, 100 Texas, 615; McDonald v. Cabiness, 98 S. W., 943; Thornton v. Moody, 24 S. W., 331.

Where two or more brokers are employed to sell the same tract of land, the one who actually consummates the sale is entitled to the commission, and this regardless of the fact that the purchasers' attention may first have been called to the land by the other brokers. Duval v. Moody, 24 Texas Civ. App., 627; Edwards v. Pike, 49 Texas Civ. App., 30; Higgins v. Miller, 58 S. W., 580; Burch v. Hester & Lawhorn, 109 S. W., 399; Glascock v. Vanfleet, 46 S. W., 450; Vreeland v. Vetterlein, 33 N. J. Law, 247; Earp v. Cummins,

93 Am. Dec., 718; Whitcomb v. Bacon, 64 Am. St. Rep., 317; Hopkins v. Moseley, 105 S. W., 104; McGuire v. Carlson, 61 Ill. App., 295; Eggleston v. Austin, 27 Kansas, 245.

A principal must adopt or reject the unauthorized act of his agent as an entirety, and as Randle & Gibson seek to share the profits of Roberts' negotiations and contract with Smith & Sholars, they must likewise bear the burdens of the contract. Therefore, if Smith & Sholars are not entitled to recover the full amount of the commissions, they are in any event entitled to recover one-half thereof, and judgment should be rendered by this court therefor. Evans-Snider-Buel Co. v. Hiljer, 83 S. W., 208; Pioneer S. & L. Co. v. Baumann, 58 S. W., 49; Sanger v. Warren, 40 S. W., 841; Mechem Agency, par. 148.

The court erred in not rendering judgment for plaintiffs, Smith & Sholars, against the defendant, Fowler, for the full amount of the commission, because the undisputed evidence shows that defendant entered into an implied contract with plaintiffs to pay them five percent commission for their services in selling the land and that they effected a sale of the land on terms satisfactory to said defendant, and thereby defendant became indebted to them in the sum of five percent commission on the purchase money of such sale, as the reasonable value of their services. McDonald v. Cabiness, supra; Thornton v. Moody, 24 S. W., 331.

*J. C. Scott,* for appellee.—In the lower court neither the appellants nor any of the other plaintiffs questioned by demurrer or plea the right of appellee Fowler to the remedy of interpleader; and especially is it true that appellants did not object to being impleaded by Fowler with the other plaintiffs for the purely technical reason that the claims of plaintiffs were not derived from a common source, and they can not now, for the first time, on this appeal, raise this specific objection to the interpleader. Coles v. Perry, 7 Texas, 142; Lufkin v. Galveston, 73 Texas, 343; Tucker v. Brackett, 28 Texas, 340; Knights of the Golden Rule v. Rose, 62 Texas, 321; Davis v. San Antonio & G. S. Ry. Co., 44 S. W., 1016; Williams v. Blum Land Co., 55 S. W., 374.

Under our blended system, in which the rights of all parties in a subject matter of litigation can be so well protected in the same suit, when a stakeholder can not safely determine as to which of several claimants he should pay a fund held by him, and they will not agree among themselves as to who should receive it, and they all threaten to sue separately, it is not only proper, but necessary, that he should interplead all of them in order to avoid a multiplicity of suits and a risk in the payment of the money. And especially is this true when some of the claimants claim under the others, and it is impossible for the stakeholder to determine which of them rendered the service entitling him to the fund. Williams v. Wright, 20 Texas, 500; Nixon v. Malone, 100 Texas, 250; Alamo Ice Co. v. Yancey, 66 Texas, 187; Kelley Grain Co. v. English, 34 S. W., 651, and cases there cited; Foy v. East Dallas Bank, 28 S. W., 137, and cases there cited; Bolin v. St. Louis S. W. Ry. Co., 61 S. W., 444.

See extensive note of Mr. Freeman to the case of Connecticut M. L. Ins. Co. v. Tucker, 91 Am. St. Rep., 593 et seq., especially note b, on page 595, and note d on page 600; Crane, Respondent, v. McDonald, Impleaded, Appellant, 118 N. Y. Rep., 648 to 659, 23 N. E., 991, a decision by the N. Y. Court of Appeals, the court of last resort in that State.

FLY, ASSOCIATE JUSTICE.—This is a controversy by appellants and other land agents over a commission of $4800 alleged to be due by C. S. Fowler, one of the appellees. The suit was instituted by appellants against Fowler, and he admitted an indebtedness of $4800 for the sale of his land, but being perplexed and bewildered by the number of land agents claiming the money, he deposited it with the clerk and prayed the court to determine the ownership of the money and protect him from the demands of the different claimants, who consisted of appellants, the Randle-Gibson Real Estate Company, Fred Roberts and F. Z. Bishop, each one of whom claimed to be the procuring cause of the sale of 8000 acres of Fowler's land to Simmons. The cause was heard by the court, who gave Fowler $250 as an attorney's fee out of the money on deposit allotted to appellants, and all costs of suit, and divided the deposit so as to give appellants and Randle-Gibson Real Estate Company each $1098.-85, and Fred Roberts $2197.70, and it was ordered that F. Z. Bishop take nothing by his suit. Everyone seems to have been satisfied with the award of the court except appellants, who have perfected this appeal, and who will be contented if they are awarded the whole of the money or possibly one-half of it. Roberts and Bishop have not appeared by briefs in this court, but Fowler and the Randle-Gibson Realty Company have made their appearance.

Fowler owned the "William Binton Ranch" in Nueces County, consisting of 19,231 acres of land, which he bought from J. C. Wood, and which was burdened with a lease to J. J. Welder for five years from April 15, 1903. On April 3, 1907, Fowler conveyed 8000 acres of the land to H. H. Simmons, J. O. Moore and O. A. Hearne for the sum of $12 an acre. The claims for commission arose out of that sale.

On January 25, 1907, Fowler authorized the Randle-Gibson Real Estate Company to sell the entire tract of land at $12 an acre net to the owner. Afterwards on January 31, 1907, Fowler authorized that company to sell in tracts of 5000 acres and over for $12.50 an acre, the fifty cents to be retained as a commission for selling.

On or about January 29, 1907, Roberts, at the solicitation of F. Z. Bishop, brought Simmons to Corpus Christi, and after negotiating with Bishop without results, Roberts and Simmons went to the office of the Randle-Gibson Real Estate Company, where the land belonging to Fowler was described to them and Simmons was urged to buy it. At the solicitation of the company Roberts and Simmons agreed to look at the land, it being understood that a man named Riddle was to accompany them. He, however, failed to put in an appearance, and Roberts and Simmons went to Alice with the view of looking at another and different tract of land between that place

and San Diego. At Alice they were met by appellants, who took them out and showed them the land belonging to Fowler.

Appellants were the agents of Fowler and were authorized to sell the land for $12 an acre, out of which they were to receive five per-cent commission, and they were authorized to sell a tract of 7000 or 8000 acres of the land which did not include the improvements. While appellants were showing Simmons the land he offered to buy 8000 acres, and it was understood that appellants were to get the matter in shape so that the trade could be closed. Appellants did not know that the Randle-Gibson Real Estate Company was the agent of Fowler, nor know of the negotiations with that company. Appellants agreed to divide commissions with Roberts on any land listed with them for which he obtained a purchaser. On February 9, 1907, Sholars introduced Simmons to Fowler, but Simmons re-fused to take the land because of the lease held by Wood, unless there was a modification of that contract. Fowler, about a week afterwards, visited Simmons at Hillsboro and sold 8000 acres of his land to Simmons, Moore and Hearne at $12 an acre, as contracted by appellants, on condition that the contract with Wood be modified to meet the views of the vendees. The clause was modified through the efforts of Fowler and appellants. Woods required a bonus as an inducement to modify his contract, of which appellants agreed to pay $250. The sale could not have been effected had not the con-tract with Woods been modified as desired by the vendees. The Randle-Gibson Real Estate Company did not obtain a purchaser for the whole tract of land at $12 net to Fowler, nor did it sell any part of the land, as authorized to do, for $12.50 an acre or any other price. When the real estate company was negotiating with Simmons, it had no authority to sell less than the whole tract, which Simmons declined to buy, and these were the only negotiations the real estate company had with Simmons and his associates. Roberts and the real estate company agreed to divide commissions on the sale of the whole tract. The Randle-Gibson Real Estate Company does not claim to have effected a sale of the property, except through the efforts of Roberts. But Randle and Gibson both swore that they had no authority to sell 8000 acres of the land and did not attempt to confer such authority on Roberts. Randle swore: "We did not at that time, or at any time, have the right to sell this land for $12 an acre." Fowler reserved the right to sell the land at any time. The evidence plainly shows that Simmons and Roberts did not go to Alice to look at the Fowler land, but went to see the Woodward ranch, and after they had seen that ranch and did not like it, Sholars suggested that his firm had a tract of land they would like to show Simmons. The latter agreed to stay until the next day, and on that day Sholars took him out to the land and showed him over it, care-fully describing its good points. Neither Simmons, Roberts nor ap-pellants knew at the time that it was the same land about which Simmons and Roberts had talked with Gibson in Corpus Christi. There is no testimony tending to show that the Randle-Gibson Real Estate Company procured, or in any manner assisted in procuring, a purchaser who was willing and able to purchase the land.

When Roberts took Simmons to Corpus Christi, it was to meet Bishop, who wished to sell Simmons the Fowler land. Bishop failed to make the sale to Simmons and the latter, in company with Roberts, then went to the Randle-Gibson Real Estate Company, which promised to send a man with Roberts and Simmons to see the Fowler land. The real estate company had no authority to sell any less than the whole tract and sought to sell it at $14 an acre, and Roberts was told that if he brought about the sale of the whole tract he should have one-half the commission. He made no effort to effect that sale, but when no one came to go with them to show the land, Roberts and Simmons abandoned all thoughts of the Fowler land and went to Alice without having it in view, and with the intention of looking at the Woodward ranch. When they were induced by appellants to inspect the Fowler land, neither of them · knew that it was the land about which they had negotiated with Randle-Gibson Real Estate Company, and Roberts at no time made any effort to induce Simmons to buy the whole of the tract under his agreement with the Randle-Gibson Real Estate Company. No purchaser was procured under the terms of the agency of the real estate company, and the sale made of the land was one that the company was never empowered to make. The sole procuring cause of the sale was the efforts of appellants.

The owner of real estate, in the absence of an express agreement to the contrary, has the right and power to employ as many different agents to sell his land as he sees fit, and that one of the agents who first procures a purchaser, under the terms of his agency, is the one entitled to the commission. Duval v. Moody, 24 Texas Civ. App., 627.

Where the principal employs several agents as brokers, the sale of the land by one of the agents or the principal terminates the authority of them all, although notice of the sale may not have been given, and the principal will only be liable for a commission to the agent who was the procuring cause of the sale. If the brokers have no knowledge of the employment of others, the broker who was the procuring cause of the sale is entitled to his commissions, no matter if another broker or the principal takes up the matter and completes the sale. (Clark & Skyles, Agency, sec. 779.) A number of agents may have rendered service, such as finding a purchaser who otherwise would not have been found, and yet may fail to consummate a sale; and another may take it up and complete it and the last one would be entitled to the commissions. (Whitcomb v. Bacon, 170 Mass., 479; Reynolds v. Tompkins, 23 W. Va., 235; Francis v. Eddy (Minn.), 52 N. W., 43; Platt v. Johr (Ind. App.), 36 N. E., 294; Scott v. Lloyd (Calf.), 35 Pac., 733; Ward v. Fletcher, 124 Mass., 224; Glascock v. Vanfleet (Tenn.), 46 S. W., 449.)

In the Massachusetts case of Ward v. Fletcher, it was said: "There was no evidence of usage, or that the defendant agreed that the plaintiff should have the exclusive right to sell the land; and no evidence that would warrant the jury in finding that the purchaser either came to an agreement with the plaintiff to take the land at that price, or bought the land upon information received from him,

One broker, who is unsuccessful in effecting a sale, does not become entitled to a commission upon the success of another."

The cited case of Francis v. Eddy is similar in its facts to this. Francis showed the property to Collom and offered it to him for the price stipulated by Eddy, his principal, but no decision was reached and an appointment was made for another meeting on the following day. The next day while on his way to the office Francis, the prospective buyer, met another agent, Tabour, and the land was bought for $9,500. The Supreme Court of Minnesota said: "To entitle a broker to compensation he must have been the efficient agent or procuring cause of the sale. He must have found and produced a purchaser, and the sale must have proceeded from his efforts as broker; and the burden is on him to prove this affirmatively. In the present case the plaintiff was not even the one who first put Collom on the track of the property, for the latter already knew the property was for sale and was listed for that purpose with Tabour, with whom he already had some negotiations regarding its purchase. Plaintiff had never made any offer to Collom which he had accepted, or so far as appears, ever would have accepted."

So, in the Tennessee case of Glascock v. Vanfleet, herein cited, the court said: "It is true that when a broker is employed to sell real estate and brings the property to the notice of a purchaser and opens up negotiations with him, the owner can not step in and complete the sale, and escape liability for commission. . . . But when a principal employs more than one broker, and the several brokers act independently and with knowledge of this fact, the one who first completes a sale is entitled to the commissions."

In this case the principal is not contesting the claim for commissions, but merely asks the court to bring before it the different agents who are claiming the money and let them settle the issue as to who shall bear off the prize. No one attacked or denied his right to interplead the different claimants in the lower court, and if there was any force or strength in the contention that an interpleader should not have been allowed, the matter can not be raised for the first time in this court.

So far as the testimony discloses Roberts did nothing to procure the sale of the land after he left Corpus Christi, and he had abandoned any thought of the sale of Fowler's land before he left that place, and if he had been acting for the Randle-Gibson Real Estate Company they could not profit because he did nothing, and the only ground upon which he could possibly recover any of the commission is that appellants promised to give him one-half of it.

Appellants were the only agents authorized to sell 8000 acres of the land, and were the only ones who ever offered the land to Simmons on the terms on which it was sold to him and his associates. Simmons swore positively that his negotiations with the real estate company did not influence his actions, for the good and sufficient reason that he did not know that the land he bought was the same land about which he had talked with the real estate company. The purchase was not made on the same terms offered by the company and it earned no commission. Edwards v. Pike, 49 Texas Civ. App.,

30. The case cited is a well considered one and directly in point in this case.

The judgment is reversed and judgment here rendered that C. S. Fowler recover $250 of appellants and Roberts as an attorney's fee, and to recover of appellants and Roberts the sum of $250 which they agreed to pay towards obtaining a modification of the Wood contract, and all costs of this suit, to be paid out of the money deposited in the registry of the lower court, and that appellants and Fred Roberts recover of C. S. Fowler the sum of $4800 less the sum of $500 aforementioned, and all costs, to be paid out of said sum on deposit, to be divided equally between them, each to receive one-half; that F. Z. Bishop and the Randle-Gibson Real Estate Company take nothing by this suit and pay all costs in this behalf expended.

*Reversed and rendered.*