Mrs. R. L. OREM et al., Appellants,

v.

FARMERS NATIONAL BANK IN BRENHAM, Texas, Appellee.

No. 3631.

Court of Civil Appeals of Texas. Waco.

May 28, 1959.

Rehearing Denied June 18, 1959.

Clawson, Jennings & Clawson, Houston, for appellants.

W. J. Embrey, Brenham, for appellee.

TIREY, Justice.

This suit (nonjury) involves the rights of a stakeholder. In the judgment we find substantially the following recitals: that the bank had on deposit at the time of the filing of this suit to the credit of Mr. and Mrs. C. C. Martin the sum of $3,004.10, and accrued dividends on five shares of the capital stock of the bank in the amount of $90, and that these shares were of the value of $1,000, making a total sum involved in the suit in the amount of $4,094.10; that the bank had duly deposited this sum in the registry of the Court, and the bank prayed that the money be paid over to whomsoever the Court might determine to be entitled to receive the same, and that a receiver be appointed to endorse and transfer the five shares of stock in the bank to the person entitled to receive the same; that such bank occupied the position of a stakeholder, and that it was entitled to be discharged and recover its costs, including a reasonable attorney's fee of $614.11. The Court further found that five shares of the stock in such bank, and the funds on deposit in the original bank account were the property of the community estate of Mr. and Mrs. C. C. Martin, both deceased; that Mrs. Martin died testate and devised her estate to her husband, C. C. Martin, and that thereafter, C. C. Martin died testate and devised the five shares of the stock in the bank to Mrs.

Annie Mercer, one of the plaintiffs in this cause, and the residue of the estate, which included the funds on deposit in the bank, to plaintiff, Mrs. R. L. Orem, and Mrs. R. L. Graham, and found that Mrs. Mercer is entitled to receive the dividends on the five shares of stock, and the Court decreed accordingly. The decree further appointed the District Clerk of Washington County as Receiver to endorse the five certificates of stock in the bank so that such shares could be set over to Mrs. Mercer, and directed the Clerk to pay the $90 accrued dividends on the five shares to Mrs. Mercer. He further ordered the remainder of the funds on deposit in the registry of the Court in the total amount of $3.004.10 to be paid proportionately to Mrs. Orem and Mrs. Graham after payment of the costs and attorney's fees provided for in the decree. Plaintiffs duly excepted to the decree and gave notice of appeal to the First Supreme Judicial District of Texas, and the case is here on transfer. The decree is assailed on what appellants designate as three points; such points raise substantially one question, and, that is, that the Court erred in finding that the bank occupied the position of a stakeholder and consequently erred in holding that it is entitled to recover its costs and its attorney's fees.

■ Much has been written in causes involving the rights of an alleged stakeholder. In Employers' Casualty Co. v. Rockwall County, Tex.Com.App., 120 Tex. 441, 35 S.W.2d 690, 693, opinion adopted, made this pronouncement: "The county was entitled to maintain an interpleader suit if there existed a reasonable doubt, either of fact or law, as to which of the conflicting claimants was entitled to receive payment of the funds held by it." Citing many cases. Justice Alexander, in McCormick v. Southwestern Life Ins. Co., Tex.Civ.App., 35 S.W.2d 502, 503 (N.W.H.), made this statement of the Rule: "In order to justify such a suit, the circumstances must be such as to place the stakeholder in some real doubt or hazard in passing and acting upon the conflicting claims." In Rio Grande National Life Ins. Co. v. Schmidt, Tex.Civ.App., 292 S.W.2d 864, 868 (N.W.H.), we find this statement by Justice Young of the Dallas Court:

"* * * To invoke the provisions of Rule 43, the stakeholder must be faced with close or doubtful questions of fact or of law; * * * 'A mere assertion of claim by another, without alleging anything whatever on which to base it, is not enough to sustain an interpleader. There must be a reasonable ground of uncertainty as to which claimant is entitled to the fund, and a bona fide controversy between rival claimants. Where the petitioner may be discharged from all liability by paying the money to one of the claimants, an interpleader will not be sustained. Where it appears that the claim of the third person is frivolous or invalid, an application for an order to interplead should be denied.'" 48 C.J.S. Interpleader § 14, p. 52.

Section 180 of our new Probate Code, V.A.T.S., provides: "When application is filed for letters of administration and the court finds that there exists no necessity for administration of the estate, the court shall recite in its order refusing the application that no necessity for administration exists. An order of the court containing such recital shall constitute sufficient legal authority to all persons owing any money, having custody of any property, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the estate, and to persons purchasing or otherwise dealing with the estate, for payment or transfer to the distributees of the decedent, and such distributees shall be entitled to enforce their right to such payment or transfer by suit."

Our view of the record here is that the controlling facts of this case are without dispute. The record shows and the judgment of the court found that Mrs. C. C. Martin died testate prior to her husband; that she left her estate to her husband, C.

C. Martin, and that, thereafter, C. C. Martin died testate and devised the five shares in the bank to Mrs. Mercer, and that he gave the residue of his estate, which included funds on deposit in the bank, to Mrs. Orem and Mrs. Graham. The record further shows that on the 26th day of July, 1957, the County Court of Burleson County entered an order under the provisions of Section 180 of the Probate Code, which order provides in effect: " * * * it having been proven to the satisfaction of the Court that the bequest made in the will of C. C. Martin, deceased, has been paid in full, as is evidenced by receipt from the said Annie Mercer filed herein, that all debts of the Deceased have been paid, and there is no evidence of any necessity for an administration on the estate of the Deceased, and that this estate should be closed and dropped from the docket of the Court; and, That 'Mrs. R. L. Oren' named in the will of the said C. C. Martin, Deceased, is one and the same person as Barbara Jane Orem, wife of R. L. Orem: It is therefore ordered, adjudged and decreed that Mrs. R. L. Orem and Mrs. R. L. Graham are hereby found to be the sole and only persons entitled to receive the undistributed portion of the estate of C. C. Martin, Deceased, and that this Estate be closed and dropped from the docket of this Court."

After the foregoing order was entered, plaintiffs, through their attorneys, advised the above bank to the effect that the estate of C. C. Martin had been closed, and that one year had elapsed since the probate of his will, and that the time had arrived when such estate could be closed, and distributed to the parties named in the will. The most of this information was contained in a copy of a letter that plaintiffs' attorney had written to the Honorable Clint Lewis, County Judge of Burleson County. It appears that such letter, and a copy of the letter to Judge Lewis, together with the bank's file on this matter, was given to the bank's attorney. Thereafter, on the 26th day of July, 1957, the bank's attorney made his reply. This letter consists of a little more than three typewritten pages in the Statement of Facts. It comments at length upon our Probate Code, but does not give the President of the bank any specific instructions as to what should be required of plaintiffs before the bank transfers the stock and pays the money over under the terms of the will and the order of the Probate Court. The last paragraph of the letter provides: "Unfortunately, this Probate Code is filled with discrepancies, deficiencies, contradictions, and indefinite ambiguous rules—some of which we got the last session of the Legislature to correct—and is the cause of a lot of trouble in handling estates. After all, we have to depend on the common sense of the Probate Judge in getting the job done. The file is returned."

When the President of the bank received the foregoing letter, he wrote (July 29, 1957) the attorneys for plaintiffs as follows:

"In reply to your letter of July 25, 1957, having reference to the Estate of the late C. C. Martin, Deceased, of Somerville, Texas, I wish to advise that we have submitted the matter to our Legal Department, * * * and we are pleased to enclose herewith a copy of his reply, which is self-explanatory."

We think it is important to state that up until the time that plaintiffs' attorneys made their demand upon the bank for the transfer of the stock and for the payment of the funds in the account of C. C. Martin, and up to the time of the filing of the suit by plaintiffs, that no other claim had been made on said bank for this property.

The defendant Bank went to trial on its original answer and, as we view it, does not set up any claim adverse to plaintiffs or otherwise; it does set up that it is entitled to its costs and a reasonable attorney fee of $500, and further asked that a receiver be appointed to carry out the decree of the Court.

As we understand appellees' brief the bank bases its contentions on the fact that

at one time this account was carried in the name of Mr. and Mrs. C. C. Martin, but we find nothing in the record to indicate that this information had been given to the plaintiffs or their attorneys as a reason for the bank's refusal to make distribution in accordance with the order of the Probate Court entered under provisions of Section 180 of our Probate Code. It is true that it appears from the bank's attorney's letter that he was unwilling for the bank to follow the order entered under the provisions under Section 180 of the Probate Code, but his letter did not specifically point out to the bank exactly what it should require, and the bank made no requirements of the plaintiffs except to mail to plaintiffs' counsel its attorney's letter. It is true that the bank's attorney testified in part on the trial of this cause: " * * * I called Mr. Sloan's attention to these facts and suggested this was legally a community bank account—community property, and that the heirs of Mrs. Martin or any claimants to her share would be people interested in it; if the bank, of course, paid all this money to C. C. Martin's heirs or claimants, that afterwards the heirs or claimants of Mrs. C. C. Martin might show up and demand payment of it. The bank, at this time, knew nothing about it and had never been furnished any information about the Estate of Mrs. C. C. Martin, if she was deceased. They didn't know whether she was living or dead at the time."

■■■ We do not find this contention set out in the letter of the bank's attorney, and as we have above stated, the bank made no such contention to plaintiffs' attorneys. This record shows without dispute that Mrs. Martin had been dead some time and that she died testate, and bequeathed her property to her husband. It would have been easy for the plaintiffs to have satisfied the bank on the matter of community interest if the bank had called it to their attention. Certainly it was the bank's duty so to do if it was making such contention. Moreover, it is our view that the finding of the Trial Court in its decree that the funds

in question belonged to the community estate of Mr. and Mrs. C. C. Martin is not only without support in the evidence, but it is in outright contradiction to the undisputed factual situation here before us. In fact, such finding by the Trial Court is in irreconcilable conflict with the Court's decree wherein it found: " * * * and the funds on deposit in the original bank account were the property of the community estate of Mr. and Mrs. C. C. Martin, both deceased; that, thereafter, Mrs. Martin died testate and devised her estate to her husband, C. C. Martin, and thereafter the said C. C. Martin died testate and devised the five (5) shares of capital stock in the Farmers National Bank in Brenham, Texas, to Mrs. Annie Mercer, one of the plaintiffs in this cause, and the residue of the estate, which included the funds on deposit in said defendant Bank, to the plaintiff, Mrs. R. L. Orem and Mrs. R. L. Graham." Since no claims adverse to plaintiffs' had been made to the bank for the property in question, the bank is not entitled to invoke the doctrine of a stakeholder, and by reason thereof, it is not entitled to its attorneys fees, nor to the costs of court, and the error of the Court in this respect will require this cause to be reversed and rendered in part.

We are of the further view that that part of the judgment that finds that the capital stock in the Farmers National Bank in Brenham in the amount of five shares should be transferred and set-over and delivered to Mrs. Annie Mercer, and that she be paid the sum of $90 accrued dividend on the shares, must be affirmed; that part of the judgment which finds that Mrs. R. L. Orem, and Mrs. R. L. Graham shall be paid the balance of the funds on deposit in the bank, must be affirmed.

Since the bank paid the cash into the registry of the Court we see no reason to disturb that part of the judgment that appoints Paul Klingsporn, District Clerk of Washington County, Texas,. as receiver, and authorizes him to endorse the certificates of five shares of stock in the Farm-

ers National Bank so that they can be transferred to Mrs. Annie Mercer, and which further authorized such receiver to pay the $90 accrued dividends on such shares to Mrs. Mercer, and further authorized such receiver to pay the balance of the funds in the amount of $3,004.10 proportionately to Mrs. Orem and Mrs. Graham, should be and is affirmed.

Such judgment in all other respects is reversed and rendered, and the bank is denied recovery of its attorneys fees, and all costs of this proceeding, including the court below, and the cost of this appeal. All costs of receiver in winding up this matter are taxed against plaintiff bank. The Clerk of the District Court is further ordered to issue such other writs as may be appropriate and necessary in favor of the plaintiffs to enforce this judgment. Reversed and rendered in part, and affirmed in part.