DALLAS BANK AND TRUST
COMPANY, Appellant,

v.

COMMONWEALTH DEVELOPMENT CORPORATION, American Industries Investments, Inc., and Forty-Five Fifteen Corporation, Appellees.

No. 05–83–00930–CV.

Court of Appeals of Texas,
Dallas.

Dec. 3, 1984.

Rehearing Denied Feb. 27, 1985.

Steven L. Page, Witts & Wilson, Dallas, for appellant.

Nancy A. Thomas, Winstead, McGuire, Sechrest & Minick, John A. Price, Alan H. Cooper, Kasmir, Willingham & Krage, Dallas, for appellees.

Before STOREY, STEWART and SHUMPERT, JJ.

STOREY, Justice.

This appeal arises from an interpleader action filed by Dallas Bank and Trust Company against the beneficiary of its letter of credit and its customers (the account parties) for whom the letter of credit was issued. The beneficiary, Commonwealth Mortgage Corporation (successor to United Financial Corporation, the named beneficiary), recovered summary judgment in the interpleader action for the full amount of the funds tendered. After severance of the summary judgment, the account parties, American Industries Investments, Inc., and Forty-Five Fifteen Corporation, were granted declaratory judgment absolving them from all liability to Dallas Bank. Dallas Bank's appeals of both judgments are consolidated in this appeal. The bank contends that the summary judgment in favor of Commonwealth was error and, alternatively, that the declaratory judgment in favor of the account parties was error. We affirm.

On December 22, 1981, Dallas Bank issued its letter of credit in the following terms:

> December 22, 1981
>
> IRREVOCABLE LETTER OF CREDIT NO. 1132
>
> United Financial Mortgage Corporation
> 421 E. Airport Freeway
> Irving, TX 75062
>
> Re: American Industries Investments, Inc.
> (Regency Condominiums)
>
> Gentlemen:
>
> We hereby establish our Irrevocable Letter of Credit No. 1132 in your favor, for account of American Industries Investments, Inc. for Eight Hundred Thousand and no/100 Dollars ($800,000.00) available by your draft at sight on Dallas Bank and Trust Company. Ten days notice that American Industries Investments, Inc. is at default, on the project known as "Regency Condominiums," as determined by United Financial and/or its assigns is also required.
>
> A draft drawn under this Letter of Credit must be marked: "Drawn under Dallas Bank and Trust Company Credit No. 1132." The amount of the draft must be endorsed on reverse hereof by negotiating bank.
>
> This Letter of Credit is effective as of this date, and will expire on December 22, 1982.
>
> DALLAS BANK AND TRUST COMPANY
>
> By: /s/ W.A. Lanfer, Sr. Vice-President

The letter was issued to assure performance of a construction contract known as "Regency Condominiums." On December

22, 1982, Dallas Bank issued the following amendment:

December 22, 1982

United Financial Mortgage Corporation

421 E. Airport Freeway

Irving, TX 75062

RE: American Industries Investments, Inc.

(Regency Condominiums)

Dallas Bank and Trust Company L/C # 1132

Gentlemen:

Please amend our L/C 1132 in your company's favor for the account of our customer, Forty-Five Fifteen Corp. as follows:

Amend this L/C for a period of one year to expire on December 22, 1983.

All other terms and conditions remain the same.

Very truly yours,

/s/ N.L. Lester

President

By letter dated March 31, 1983, Commonwealth notified Dallas Bank that American Industries was in default and that it intended to draft on the letter after ten days. On April 11, 1983, American Industries directed Dallas Bank not to honor any drafts on the letter, citing as its reasons that the letter had expired, the demand documents were non-conforming, it was not in default, and the demand was excessive. On the same day, Commonwealth presented its draft on the letter for $137,378.49. Dallas Bank neither honored nor gave notice of dishonor of the draft. Instead, on April 12, within the three-day dishonor period, TEX. BUS. & COM.CODE ANN. 5.112(a)(1) (Vernon ·1968), it filed its original petition in interpleader, joining Commonwealth, American Industries, and Forty-Five Fifteen as defendants.

Dallas Bank's petition asserted that: (1) the letter of credit had been issued in favor of Commonwealth; (2) a demand and an instruction to dishonor had been received; (3) it was unable to decide the validity of conflicting claims and was an innocent stakeholder subject to double liability; (4) it was unconditionally tendering the fund into court; (5) it claimed no interest in the fund; (6) it was not indemnified by any defendant; and (7) the fund be paid to the prevailing defendant after payment of its costs and attorney's fees.

Commonwealth filed its answer and counterclaim on April 19 and on the same day filed a motion for summary judgment. After the motion was filed, American Industries and Forty-Five Fifteen answered the interpleader action and disclaimed any interest in the fund. Summary judgment was granted Commonwealth on May 13, and the action between it and Dallas Bank was severed. American Industries and Forty-Five Fifteen then filed a counterclaim against Dallas Bank for a declaratory judgment establishing that they were not in default and were not liable to reimburse the bank for any amount paid by it to Commonwealth. Declaratory judgment was granted in their favor against Dallas Bank, and the bank has appealed both judgments.

## INTERPLEADER

Although every reasonable doubt should be resolved in favor of the putative stakeholder's right to interplead, *Citizens National Bank of Emporia v. Socony Mobil Oil Co.*, 372 S.W.2d 718, 722 (Tex.Civ. App.—Amarillo 1963, writ ref'd n.r.e.), we hold that the bank's petition did not allege proper grounds for interpleader relief. *See Danner v.·Aetna Life Insurance Co.*, 496 S.W.2d 950, 953 (Tex.Civ.App.—Fort Worth 1973, no writ); *Hayes v. Norman*, 383 S.W.2d 477, 478 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). The purpose of the interpleader procedure is to relieve an innocent stakeholder of the vexation and expense of multiple litigation and the risk of multiple liability. 1 R. MCDONALD TEXAS CIVIL PRACTICE 3.38 (rev. 1981). Interpleader is appropriate, therefore, only when the stakeholder is or may be exposed to multiple liability. TEX. R.CIV.P. 43; *Davis v. East Texas Savings & Loan Association*, 163 Tex. 361, 354 S.W.2d 926, 930 (1962); *Frazier v. Wynn,*

492 S.W.2d 54, 58 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *Gillespie v. Citizens National Bank of Weatherford*, 97 S.W.2d 310, 313 (Tex.Civ.App.—Texarkana 1936, no writ). Because of the unique nature of the letter of credit, Dallas Bank never was in danger of suffering multiple liability.

 A letter of credit transaction involves three separate and independent undertakings: one between the issuer and the beneficiary, one between the issuer and its account party, and, finally, the underlying obligation between the account party and the beneficiary. No party to one contract is responsible for performance of the obligations of another contract. *See Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1978). Thus, Dallas Bank had no duty to inquire whether American Industries was in fact in default because the letter required only that Commonwealth notify Dallas Bank that in its judgment American was in default. The letter of credit was strictly an undertaking between Dallas Bank and Commonwealth. If Commonwealth's demand complied with the terms and conditions of the letter of credit, Dallas Bank was obligated to honor the draft without reference to the obligations of the parties to the underlying transaction. TEX.BUS. & COM.CODE ANN. 5.114(a) (Vernon 1968); *Republic National Bank*, 578 S.W.2d at 112. If, on the other hand, the draft did not conform to the letter of credit, Dallas Bank was entitled to dishonor it. TEX.BUS. & COM. CODE ANN. 5.114(b) (Vernon Supp.1984). Furthermore, "an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents...." TEX.BUS. & COM.CODE ANN. 5.114(b)(2) (Vernon Supp.1984). American Industries and Forty-Five Fifteen were not parties to the letter of credit and could not affect the bank's decision to honor or dishonor except by seeking an injunction. *See* TEX.BUS. & COM.CODE ANN. 5.114(b)(2) (Vernon Supp.1984). Thus, Dallas Bank was obligated to honor or dishonor, and, although wrongful dishonor could have subjected it to liability to Commonwealth, TEX.BUS. & COM.CODE ANN. 5.115 (Vernon 1968), neither course of action could have subjected it to liability to American or Forty-Five Fifteen. In fact, both corporations disclaimed any interest in the interpleaded funds. The risk that payment of the draft might have left the bank without a right of reimbursement against the account parties was not the kind of exposure to multiple liability that would justify interpleader relief.

 Despite our holding that interpleader was improper, the court properly adjudicated the issues between the parties. TEX.R.CIV.P. 43 expressly states that its provisions "supplement and do not in any way limit the joinder of parties permitted in other rules." TEX.R.CIV.P. 47, 51 permitted Dallas Bank's joinder of claims. Accordingly, all parties were properly before the trial court, the court had jurisdiction to adjudicate the dispute, and, on appeal, we will treat the purported interpleader petition as a request for a declaratory judgment pursuant to TEX.REV.CIV.STAT. ANN. art. 2524–1 (Vernon 1965 & Vernon Supp.1984). *See Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787, 789 (Tex.App.—Houston [14 Dist.] 1984, writ ref'd n.r.e.); *Davis v. East Texas Savings & Loan Association*, 163 Tex. 361, 354 S.W.2d 926, 932 (1962). Further, because the bank unconditionally tendered the fund into court, we will, nevertheless, treat the fund as subject to disposition by the judgment.

## SUMMARY JUDGMENT

Dallas Bank attacks the summary judgment on several grounds. It contends that there were issues of fact, that the grant of judgment on the pleadings without supporting affidavit was error, that the motion was untimely filed, and that it was denied the right to replead. It also attacks the court's action in severing the Dallas Bank—Commonwealth action from the remaining action and complains of the relief

granted Commonwealth in the final judgment.

Commonwealth filed its answer and counterclaim and motion for summary judgment in each of which it admitted the material allegations of Dallas Bank's petition and asserted its exclusive right to the fund. American Industries and Forty-Five Fifteen answered, disclaiming any right to the fund; consequently, they did not respond to the motion for summary judgment. Neither Commonwealth's motion nor Dallas Bank's response was accompanied by supporting affidavits. The motion was granted on the pleadings.

Commonwealth argues that judgment on the pleadings was proper, and that, after award of the fund, it was properly severed and dismissed. Commonwealth further urges on appeal that by making an unconditional tender of the fund into the court, disclaiming any interest in it and praying the court to make proper disposition, Dallas Bank received the relief prayed for and, therefore, is estopped to complain of the court's action. This contention is supported by authority. *Northeast Texas Motor Lines, Inc. v. Hodges*, 138 Tex. 280, 158 S.W.2d 487 (1942); *Whitehead v. Traders & General Insurance Co.*, 128 S.W.2d 429 (Tex.Civ.App.—Amarillo 1939, no writ). We are persuaded, however, that, independent of this conclusion, the trial court properly granted summary judgment.

Commonwealth argues that by refusing to dishonor its draft and, instead, making an unconditional tender and disclaimer of the funds, the bank's action was tantamount to an honor of the draft. Commonwealth further urges that Dallas Bank's pleadings amounted to judicial admissions which entitled it to judgment as a matter of law. While not disagreeing with Commonwealth's first contention, we base our holding on the second, namely, that the pleadings of all parties before the court demonstrate that Commonwealth was entitled to summary judgment as a matter of law.

■ Whether we consider the allegations of Dallas Bank's petition as judicial admissions of material fact or as statements of applicable law, it is clear that those allegations established that Commonwealth was entitled to the relief it sought as a matter of law. The pleadings established that Commonwealth had a valid claim to the proceeds of its draft. Dallas Bank admitted in its pleading that it claimed no interest in the fund, that it "issued in Defendant Commonwealth's favor a letter of credit, ..." and that Commonwealth "made demand upon Plaintiff by draft pursuant to the letter of credit, in the amount of ONE HUNDRED THIRTY-SEVEN THOUSAND THREE HUNDRED SEVENTY-EIGHT DOLLARS AND FOR-TY-NINE CENTS ($137,378.49)." Thus, Dallas Bank effectively admitted that Commonwealth made a timely demand or draft that complied with the terms of the letter of credit, obligating Dallas Bank to honor the demand. *See* TEX.BUS. & COM.CODE § 5.114(a) (Vernon 1968).

■ Although Dallas Bank filed a First Amended Petition in Interpleader alleging that the letters of credit were issued in favor of United Financial Mortgage Corporation and that Commonwealth did not present documents showing entitlement to the fund, that petition was filed without leave of court and over Commonwealth's objection within seven days of the hearing and, hence, was untimely. TEX.R.CIV.P. 63. Accordingly, we cannot consider it for any purpose. *See Claude Regis Vargo Enterprises, Inc. v. Bacarisse*, 578 S.W.2d 524, 529 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Mainland Savings Association v. Wilson*, 545 S.W.2d 491, 493 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ).

■ The pleadings also establish that Dallas Bank claimed no interest in the fund which it unconditionally tendered into court. By their pleadings, the remaining defendants disclaimed all interest. This set of circumstances left Commonwealth as the only party at interest asserting a claim to the fund. Since only one claimant prayed for and proved a right to the fund, the

court correctly granted its request. *See Northshore Bank,* 668 S.W.2d at 789–90.

■ We recognize that, as a general rule, pleadings do not constitute summary judgment proof. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Wells Fargo Construction Co. v. Bank of Woodlake,* 645 S.W.2d 913, 915 (Tex.App.—Tyler 1983, no writ); *Kehoe v. Lambert,* 633 S.W.2d 576, 578 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). If, however, a plaintiff pleads facts which affirmatively negate a cause of action, summary judgment is proper. *Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974); *Stiver v. Texas Instruments, Inc.,* 615 S.W.2d 839, 843 (Tex.Civ.App.—Houston [1st Dist. 1981, no writ); *Bowen v. Calallen Independent School District,* 603 S.W.2d 229, 231 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Dallas Bank's allegations in its pleadings are clear and unequivocal and, accordingly, constitute judicial admissions, requiring no proof of admitted facts and disallowing the introduction of contradictory evidence. The judicial admissions negate Dallas Bank's cause of action and authorize summary judgment. *Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex. 1980); *Davis v. Quality Pest Control,* 641 S.W.2d 324, 329 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Flintkote Supply Co. v. Thompson,* 607 S.W.2d 41, 43 (Tex.Civ.App.—Beaumont 1980, no writ); *Houchins v. Scheltz,* 590 S.W.2d 745, 750 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ).

■ Dallas Bank additionally challenges the timeliness of Commonwealth's motion for summary judgment. TEX.R. CIV.P. 166–A(a) provides that "A party seeking to recover upon a claim, counter-claim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move ... for summary judgment." Because the motion was filed before American and Forty-Five Fifteen answered the purported interpleader, Dallas Bank argues

that it was not timely. We disagree. First, the interpleader was improper, and neither American nor Forty-Five Fifteen was an adverse party with respect to Commonwealth's motion for summary judgment. Secondly, Dallas Bank has no standing to complain that the motion was premature with respect to the other parties because any error in that respect could not have affected it adversely. *Shell Petroleum Corp. v. Grays,* 131 Tex. 515, 114 S.W.2d 869, 870 (1938); *CNL Financial Corporation v. Hewlett,* 539 S.W.2d 176, 178 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). *See Northshore Bank v. Commercial Credit Corp.,* 668 S.W.2d 787 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ Dallas Bank further contends that the final judgment was not supported by the pleadings and, accordingly, was void. *See* TEX.R.CIV.P. 301; *Ex parte Fleming,* 532 S.W.2d 122, 123 (Tex.Civ.App.—Dallas 1975, no writ); *Douthit v. Anderson,* 521 S.W.2d 127, 129 (Tex.Civ.App.—Dallas 1975, no writ). Specifically, the bank contends that since the judgment dismissed the "Interpleader action and all claims asserted by Dallas Bank against Commonwealth" and Commonwealth's counterclaim, no affirmative pleadings on which to base a judgment were pending before the court. We disagree. Commonwealth, in answer to the interpleader petition, asserted its right to the funds deposited in the custody of the court. In its counterclaim, Commonwealth asserted, alternatively, that Dallas Bank's actions constituted dishonor of the draft and, accordingly, that, under TEX.BUS. & COM.CODE ANN. § 5.112(a), it was entitled to $800,000.00, the entire amount of the credit. Thus, Commonwealth's motion for summary judgment requesting, among other things, an award of the "monies tendered into the Registry of the Court" was supported by an affirmative pleading.

■ Dallas Bank further contends that the court erred by (1) awarding the fund before a hearing on the propriety of the interpleader; (2) dismissing its petition

in interpleader; (3) failing to grant it a discharge against all parties upon disposition of the fund; and (4) overruling its Motion to Vacate or For Rehearing. We disagree. Although an interpleader ordinarily involves a preliminary action between the plaintiff and the defendants to determine whether the defendants should answer, *see Grand Lodge Colored K.P. of Texas v. Cleo Lodge No. 222, Colored K.P.,* 189 S.W. 764 (Tex.Civ.App.—San Antonio 1916, no writ), Dallas Bank did not object to the trial court's hearing the summary judgment and, accordingly, cannot complain of any error in this regard on appeal. *See Zachary v. Overton,* 157 S.W.2d 405, 407 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.); *Smith & Sholars v. Fowler,* 57 Tex.Civ.App. 356, 122 S.W. 598 (1909, no writ). Furthermore, since the interpleader was improper for the reasons already stated, the court did not err by failing to discharge Dallas Bank or by dismissing the petition in interpleader. Finally, Dallas Bank's contention that the court erred by overruling its post-judgment motion was not supported on appeal by argument or authorities and, accordingly, was waived. *Dacus v. Grimes,* 624 S.W.2d 298, 300 (Tex. App.—Tyler 1981, no writ); *Arrechea v. Arrechea,* 609 S.W.2d 852, 855 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

Dallas Bank additionally challenges the severance of the dispute between it and Commonwealth from the controversy between it and American and Forty-Five Fifteen. Dallas Bank asserts that, as adverse claimants, American and Forty-Five Fifteen were necessary parties to the interpleader whose claims were not resolved by the summary judgment. Thus, the severance, according to Dallas Bank, subjected it to inconsistent judgments, a result the interpleader procedure was designed to avert.

▇▇▇ We do not agree with Dallas Bank's reasoning because the case was not a true interpleader. Dallas Bank's contractual agreement with Commonwealth was separate and distinct from the bank's underlying agreements with the account parties, and its liability to Commonwealth was independent of any right to reimbursement against them. Thus, the controversy involved more than one cause of action, the severed cause properly could have been resolved in an independent lawsuit, and the cases do not involve identical facts and issues. *See St. Paul Insurance Co. v. McPeak,* 641 S.W.2d 284, 289 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (on rehearing); *Burleson v. Finley,* 581 S.W.2d 304, 308 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.); *Straughan v. Houston Citizens Bank & Trust,* 580 S.W.2d 29, 33 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

▇▇▇ Furthermore, in its Motion For Severance, Commonwealth alleged that good cause for severance existed in that (1) the summary judgment resolved all disputed claims to the tendered funds; (2) the claims between Dallas Bank and the account parties were unrelated to the claims between Dallas Bank and Commonwealth; (3) failure to sever would have caused unnecessary delay and deprived Commonwealth of use of the funds; and (4) severance was essential to enforce the otherwise interlocutory summary judgment. A trial court is vested with broad discretion in determining whether to sever a cause of action, and its decision will not be overturned on appeal absent an abuse of discretion. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *Fisher v. First National Bank of Memphis, Texas,* 584 S.W.2d 515, 520 (Tex.Civ.App.—Amarillo 1979, no writ). We hold that the trial court did not abuse its discretion.

▇▇▇ Dallas Bank additionally asserts that, as an innocent stakeholder, it was entitled to attorney's fees assessed against the interpleaded fund. *See United States v. Ray Thomas Gravel Co.,* 380 S.W.2d 576, 581 (Tex.1964). We disagree. Since the interpleader was improper, the Bank was not an "innocent stakeholder" and, consequently, is not entitled to recover attorney's fees. *See Orem v. Farmers National Bank in Brenham,* 325 S.W.2d 149, 152 (Tex.Civ.App.—Waco 1959, writ ref'd

n.r.e.); *Security State Bank of Pharr v. Shanley,* 182 S.W.2d 136, 138–39 (Tex.Civ. App.—San Antonio 1944, no writ).

■ Finally, Dallas Bank claims that, in the July 15 judgment, the court erred by awarding Commonwealth nine percent interest from May 13, 1983, the date of entry of the summary judgment. The bank argues that this award of "prejudgment" interest exceeded the legal limit. We disagree with Dallas Bank's characterization of the award as "prejudgment." The summary judgment, though not final for purposes of appeal, fixed Dallas Bank's liability. Furthermore, the statute in effect at the time the summary judgment was entered provided that "[a]ll judgments of the courts of this state shall bear interest at the rate of nine percent." Act of 1975, ch. 288, § 1 1975 Tex.Gen.Laws, Local & Spec. 730, *repealed by* Act of 1983, ch. 107, § 1, 1983 Tex.Gen.Laws 518. The statute does not distinguish between final and interlocutory judgments, and we cannot presume a distinction.

### DECLARATORY JUDGMENT

The trial court entered a declaratory judgment that Dallas Bank take nothing from American and Forty-Five Fifteen. The judgment declared that the letter of credit expired before Commonwealth's demand, that the demand documents did not conform to the requirements of the letter of credit, and that neither American Industries nor Forty-Five Fifteen was obligated to reimburse Dallas Bank for sums paid to Commonwealth pursuant to the summary judgment.

■ We affirm the judgment on two grounds. First, Dallas Bank alleged in its Second Amended Petition in Interpleader, the pleading upon which the declaratory judgment action was tried, that Commonwealth "presented no documents showing that either letter of credit was issued in its favor," that Commonwealth had not made a "showing in the documents ... that Forty-Five Fifteen is in default," and that "the letter of credit ... to the account of American ... expired by its own terms." These statements are judicial admissions conclusively negating Dallas Bank's claim that it was obligated to honor Commonwealth's demand.

More importantly, Dallas Bank introduced no evidence at the declaratory judgment hearing of an account relationship with American Industries or Forty-Five Fifteen, of a contract or agreement requiring American Industries or Forty-Five Fifteen to reimburse the bank, or of an express or implied indemnity obligation. Thus, no evidence was before the court to indicate that either corporation was liable to Dallas Bank. Accordingly, we affirm both judgments.

Affirmed.