**GENERAL PLUMBING & HEATING, INC., Plaintiff-Appellant,**

v.

**AMERICAN AIR FILTER COMPANY, INC., Defendant-Appellee.**

No. 82–4201
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1983.

Russell S. Gill, Biloxi, Miss., for plaintiff-appellant.

W. Scott Welch, III, Christy D. Jones, Luther T. Munford, Bennett, Lotterhos & Sulser, Joseph E. Lotterhos, Jackson, Miss., for defendant-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

This Mississippi diversity case arises out of a contract by the plaintiff ("General") to purchase heating and air conditioning units manufactured and sold by the defendant ("American"). After jury trial, General's complaint for damages for late delivery resulted in a take nothing judgment, but American was awarded judgment on its counter-claim for the amount of the contract price due. General's appeal principally contends that the trial court erred in excluding from evidence, as contradicting the written contractual terms, any discussions between the parties prior to the date of the written contract with regard to delivery dates or any discussions contemporaneous with its execution that were inconsistent with its written terms. We find no error in the trial court's ruling and, accordingly, affirm.

The trial court's ruling was based upon Mississippi's parol evidence rule, Miss.Code Ann. § 75–2–202 (1972), U.C.C. § 2–202. The rule provides that evidence of a pre-contract or contemporaneous oral agreement may not be used to contradict terms of a contractual agreement "set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein." [1]

---

1. Miss.Code Ann. § 75–2–202 (1972) provides in full:

*Final written expression; parol or extrinsic evidence.*

Here the written quotation-contract prepared by American and accepted by General was specifically made subject to terms and conditions that included (1) the quotation was expressly limited to the terms within the document, with "no understandings, agreements, or obligations (outside of this quotation) unless specifically set forth in writing"; and (2) any quoted shipping date or acknowledgment was American's best estimate but that American made no guarantee of shipment by that date and assumed no obligation for failure to ship on such date.[2]

*Mississippi's Parol Evidence Rule*

The contract was accepted and signed by General in June 1977. American completed delivery of all equipment in April 1978. General was to have completed its renovation subcontract with another party, using American's equipment, by January 1, 1978.[3] In urging breach of contract by late delivery, General claims that, except that it was barred by the trial court ruling, it would have presented testimony concerning the parties' pre-contract negotiations and agreement that American would deliver the equipment within six weeks of the order or, at least, by a date sufficient for General timely to complete its renovation subcontract.

General contends that this oral understanding constitutes a "course of dealing" or "usage of trade," which is admissible into evidence in order to "explain or supplement" the written contract, as an exception to the parol evidence rule, § 75–2–202(a) (*see* note 1 *supra*). American counters that this exception is not applicable because pre-contractual evidence of custom and usage cannot control, given the contract's express

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (Section 1–205) [§ 75–1–205] or by course of performance (Section 2–208) [§ 75–2–208]; and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

§ 75–1–205 defines "course of dealing and usage of trade":

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.

2. The terms in the quotation/contract provide:

12. .... Any shipping date stated in this quotation or any acknowledgement is [American's] best estimate but [American] makes no guarantee of shipment by any such date and shall have no liability or other obligation for failure to ship on such date, regardless of cause, unless expressly stated otherwise herein.

\* \* \* \* \* \*

16. This Quotation is expressly limited and made conditional upon acceptance by Purchaser of the terms of this quotation only, including these terms and conditions, without change. There shall be no understandings, agreements, or obligations (outside of this quotation) unless specifically set forth in writing....

3. Although immaterial to present issues, we note American's contention that delays in delivery were primarily occasioned by General's dilatoriness in furnishing it with the required credit and bonding information. General's claim for breach of the contract due to failure to deliver by a date specified by the collateral agreement was not submitted to the jury, upon the trial court's determination that parol evidence as to the agreement was inadmissible. However, in addition to this claim, General also asserted that, even if the contract did not include a specified date of delivery, nevertheless American caused it damages by an unreasonable delay in delivery. This latter claim *was* submitted to the jury. The jury awarded General $4000 in damages for an unreasonable delay in the delivery; in awarding judgment to American, the trial court deducted this amount from the jury's award to American of the amount of the unpaid contractual price.

provision that the written agreement represents the entire agreement of the parties. Moreover, American suggests that General's proposed testimony would impermissibly "contradict" the express term contained in the contract providing that any shipping date is a best estimate, that no guarantee of any shipping date is made, and that it would incur no liability for untimely shipment unless expressly stated otherwise in the agreement (*see* note 2 *supra*).

 We agree with American that the express terms and conditions contained in the written contract preclude the introduction of oral testimony regarding delivery dates. "[W]here the contract expressly states that it contains the entire agreement" between the parties (as does the contract in this case), "[e]vidence of contemporaneous oral agreements and representations varying, modifying, or controlling the written agreement is inadmissible." *Stribling Brothers Machinery Company v. Girod Company,* 239 Miss. 488, 124 So.2d 289, 293 (1960). In general, exceptions to the parol evidence rule are inapplicable when the parties have consented to the contract as a complete and accurate integration of the contract, and the terms are unambiguous on their face. *See The Great Atlantic & Pacific Tea Co. v. Lackey,* 397 So.2d 1100, 1102 (Miss.1981).

Since no firm delivery date is specified in the contract, evidence of a promised six week delivery may arguably "supplement" rather than "contradict" contract terms. However, the only reason General urges introduction of a firm delivery date is to suggest that delivery after that date constitutes a breach of contract for non-timely delivery, by reason of which American is liable for incidental and consequential damages. The testimony is inadmissible under § 75–2–205 because its intended use flatly contradicts the unambiguous language of the contract that any date agreed upon by the parties is only a "best estimate" and that American would incur no obligation or liability from untimely delivery. Thus, even if the oral arrangements here constitute "trade usage" or somehow would represent a "course of dealing" between General and American, they may be introduced only to clarify ambiguities in the written contract, not to contradict and alter the express contract provisions. *O.J. Stanton & Co. v. Mississippi State Highway Comm'n,* 370 So.2d 909, 914–15 (Miss.1979).[4]

*United States Industries, Inc. v. Semco Mfg., Inc.,* 562 F.2d 1061, 1068 (8th Cir. 1977), the only decisional authority relied upon by General, is factually inapposite. In *Semco,* the court found a delivery date agreement in the express terms of the contract. Under sections in the contract marked "date wanted" and "date required", the supplier agreed to deliver needed materials "as released," *i.e.,* in accordance with the trade usage, the date that the purchaser was ready to use the ordered materials. Because of this *written* provision, explained by testimony regarding trade usage, the court found that the contract required delivery to be made as needed during the anticipated life of the purchaser's construction project. *Id.* General suggests that a use of the term "release" in a July 27, 1977 letter from American, requesting more specification information before "releas[ing] this order for manufacture," establishes a similar "trade usage" so that it should be able to testify as to the parties' agreement to a reasonable delivery date before the due date under its subcontract. American's let-

---

4. Nor do we accept General's contention that it should be permitted a new trial to present oral evidence of delivery dates because an American employee testified to the parties' oral agreement as to *price* in asserting its counterclaim. First, General did not enter its own motion in limine or object to presentation of American's evidence during trial. Second, because the contract is silent as to price, there is no final agreement as to the parties with respect to *that* term, for parol evidence is allowed to show that the contract is not complete in all respects and then to supplement the agreement. *See Broome Construction Co. v. Beaver Lake Recreational Center, Inc.,* 229 So.2d 545, 547 (Miss.1965). Similarly, because the contract contains no price terms, an oral agreement concerning price does not impermissibly "contradict" this written contract, as would introduction of oral terms regarding delivery dates.

ter appears to request further information as to General's needs, rather than to provide delivery terms.

## Other Contentions

■ General also contends that the trial court erred in failing to grant a new trial. The alleged bases of error are allegations in affidavits filed by General's president and vice-president (who were husband and wife) (1) that General's retained civil trial counsel did not adequately represent it at the trial and (2) that the vice-president (wife) had heard a juror inquire as to the home office of the defendant American corporation and had been informed that the office was in Kentucky but that American was a subsidiary of Allis-Chalmers, a corporation that had offices in Mississippi. General suggests that this out-of-court statement "may have had an effect on that juror."

We find little merit to these contentions. We agree with the trial court that the allegations contained in the affidavit do not warrant a new trial: (1) with regard to the alleged incompetency of retained civil counsel, the allegations of incompetency fall far short of those extraordinary instances where new-trial relief has been granted due to gross neglect of counsel, 11 Wright and Miller, Federal Practice and Procedure, § 2864 at 222–23 (1973); (2) with regard to the contention that at least an evidentiary hearing should have been ordered on the alleged jury misconduct, we observe, as did the district court, that the matter was known of before the verdict and nevertheless not belatedly brought to the attention of the district court until after the verdict, by the motion for the new trial. We further observe that, even accepting that the alleged juror conversation took place, it is difficult to see how the plaintiff General, a Mississippi corporation, could be *unfairly* prejudiced by a juror's learning that the defendant, a Kentucky corporation authorized to do business in Mississippi, was a subsidiary of another corporation that had offices in Jackson, Mississippi.

## Conclusion

Finding that the trial court properly excluded parol evidence that contradicted the express terms of the written contract, and that the allegations of incompetent counsel and of jury misconduct do not warrant a new trial, we AFFIRM the judgment appealed from.

AFFIRMED.