United States Court of Appeals,

Fifth Circuit.

No. 91–1504.

RESOLUTION TRUST CORPORATION, as Conservator for Sunbelt Federal Savings, FSB, as Transferee of the Resolution Trust Corporation, as Receiver for Sunbelt Savings, FSB, Plaintiff–Appellee,

v.

William KIMBALL, Robert Rakow and Florrie Wertheimer, Defendants–Appellants.

June 26, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, REYNALDO G. GARZA, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

This is an appeal from the granting of a summary judgment in an action for reimbursement brought by the issuer of certain letters of credit. Although we find the district court erred in its understanding of the law of letters of credit, we AFFIRM the summary judgment.

I. The Facts

Appellants William Kimball (Kimball), Robert Rakow (Rakow) and Florrie Wertheimer (Wertheimer) were limited partners in Corners Associates Ltd. (Corners), a Texas limited partnership engaged in the purchase and servicing of apartment complexes in Texas. On December 20, 1983, each appellant individually executed an application for letter of credit, an agreement for letter of credit and a letter of credit note in the principal sum of $227,695.00. The applications, agreements and notes were all executed with Independent American Savings Association (Old Independent), a Texas chartered savings and loan. The letters of credit were issued in favor of Sunbelt Savings (Old Sunbelt). The amounts of the letters of credit were to assure repayment of amounts advanced pursuant to a loan from Old Sunbelt to Corners in the amount of $604,500.00.

Old Independent was declared insolvent on May 20, 1987, and the Federal Savings & Loan

Insurance Corporation (FSLIC), now the Resolution Trust Corporation (RTC), was appointed as its receiver. On the same date, the Federal Home Loan Bank issued a charter for Independent American Savings Association, a Federal Savings and Loan Association, (New Independent), and New Independent acquired "substantially all" of FSLIC's interest in Old Independent. On August 19, 1988, both New Independent and Old Sunbelt were declared insolvent and the FSLIC was appointed receiver of each institution. Also on August 19, 1988, Sunbelt Savings, FSB, (New Sunbelt) was chartered and the FSLIC transferred to it the assets of Old Sunbelt and New Independent. Thus, New Sunbelt became both the issuer and beneficiary of the original letters of credit.

On December 8, 1986, Old Sunbelt presented a draft to Old Independent in the amount of $289,568.50. The draft noted that it was "for Letters of Credit # 008, 009, 010," numbers corresponding to those of the letters of credit issued on behalf of appellants. Old Independent honored the draft and apportioned the amount equally among the three letters of credit. It sought reimbursement from the appellants and, upon their default, brought an action in state court to recover the amounts due. The case was removed to federal court after the RTC became conservator for New Sunbelt.[1] The federal district court, after opposing motions for summary judgment had been filed, granted the plaintiff's motion and rendered judgment accordingly. The appellants timely appealed the judgment to this court.

## II. The Law

We have previously addressed the nature of letters of credit and the structure of their formation. In *Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230 (5th Cir.1983), we observed:

> [A letter of credit] transaction usually comprises three separate contracts: "[f]irst, the issuing bank enters into a contract with its customer to issue the letter of credit. Second, there is a contract between the issuing bank and the party receiving the letter of credit. Third, the customer who procured the letter of credit signs a contract with the person receiving it,

---

[1]The RTC is the real party in interest in this appeal. For the sake of convenience, we refer to the party in interest as "appellee" or as "New Sunbelt".

usually involving the sale of goods or the provision of some service." *East Girard Sav. Ass'n v. Citizens National Bank, Etc.,* 593 F.2d 598, 601 (5th Cir.1979); [*citation to footnote omitted* ].

717 F.2d at 235. *See also Exxon Co. v. Banque de Paris et des Pays–Bas,* 828 F.2d 1121, 1124 (5th Cir.1987), *vacated on other grounds,* 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988); *Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109, 112 (Tex.1979).

A fundamental characteristic of the structure of the letter of credit transaction is that the three contractual relationships created thereby are separate and independent. *Philadelphia Gear,* 717 F.2d at 235; *Sun Marine Terminals v. Artoc Bank & Trust,* 797 S.W.2d 7, 10 (Tex.1990); *Dallas Bank & Trust v. Commonwealth Development Corp.,* 686 S.W.2d 226, 231 (Tex.App.—Dallas 1984, *writ ref. N.R.E.*). Thus, as a general proposition, an issuer must pay on a draft presented by a beneficiary without regard to the beneficiary's performance in the underlying transaction involving the beneficiary and the issuing bank's customer, the account party. *Dallas Bank & Trust,* 686 S.W.2d at 231 (*citing* Tex.Bus. & Comm.Code Ann. § 5.114(a) (Vernon 1968); *see also Philadelphia Gear,* 717 F.2d at 235 (issuer need only make facial examination of tendered documents before paying on beneficiary's presented draft). Similarly, and also as a general proposition, an account party must reimburse an issuer upon demand without regard to the issuer's honoring of the draft presented by the beneficiary. *Travis Bank & Trust v. State,* 660 S.W.2d 851, 855 (Tex.App.—Austin 1983 *no writ*). Thus, it is the independence of the various transactions that creates the viability of the letter of credit as a payment device. *See Sun Marine Terminals,* 797 S.W.2d at 10 (viability of letter of credit derives from independence from transaction). This independence is referred to as the "independence principle." *Id.*

The district court, in its Memorandum Opinion and Order, correctly recited these principles of the law. Incorrectly, however, it seized upon the independence principle and applied that principle in a manner which precluded the appellants from asserting a defense of wrongful honoring of the draft. The district court reasoned:

In the instant case the first contract is between Old Sunbelt and Defendants (the "First Contract"). The second contract consists of agreements and notes pursuant to which Old Independent agreed to issue the letters of credit, and Defendants agreed to reimburse Old Independent for drafts drawn upon the letters of credit (the "Second Contract"). The third contract consists of the letter of credit issued by Old Independent for the benefit of Old Sunbelt (the "Third Contract").

As [New Sunbelt] correctly points out in its response to Wertheimer's motion, it is the *Second* Contract between Old Independent and each Defendant that is at issue in the case. [New Sunbelt] has already paid on the letters of credit, and now seeks reimbursement. As its [*sic*] defense, Defendants claim that Old Independent should not have honored the draft under the letter of credit (the Third Contract), and as a consequence, it [*sic*] should not be required to fulfill its [*sic*] obligation of reimbursement under the Second Contract.....

Such analysis, however, is wholly extraneous to this lawsuit. The issue is not whether the letter of credit was properly honored or presented, but whether under their contracts with Old Independent, now [New Sunbelt], Defendants have reason not to reimburse [New Sunbelt]. In fact, whether or not Old Independent properly honored the draft would only be at issue in a suit between Old Independent and the beneficiary under the Third Contract.

The district court relied on language in *Travis Bank & Trust* that "[t]he issuer of a letter of credit, if it pays the credit in good faith and with no notice of fraud or forgery, obtains the right of immediate reimbursement from its customer, who bears alone the risk of any misinterpretation of the beneficiary's demand for payment." 660 S.W.2d at 855 (*citing* Tex.Bus. & Comm.Code Ann. §§ 5.107(d) and 5.114(c)). It then cited the following relevant portion of section 5.114(c) of the Texas Business & Commerce Code:

(c) Unless otherwise agreed an issuer which has *duly honored* a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit....

Tex.Bus. & Comm.Code Ann. § 5.114(c) (Vernon 1968) (*emphasis added*). This provision of the code plainly makes the right of reimbursement contingent upon the *duly honoring* of the draft by the issuer. The district court failed to grasp this seemingly obvious statement of Texas law and erroneously concluded the above quoted language from *Travis Bank & Trust* placed all risk of payment upon the appellants. Given the language of § 5.114(c), *Travis Bank & Trust* cannot stand for the proposition which the district court interpreted it to stand for. Moreover, *Travis Bank & Trust* fails to provide a meaningful basis for the interpretation of § 5.114(c)'s "duly honored" requirement. This is so because § 5.114(b)(2) of the Business & Commerce Code permits "an issuer [to] honor a draft or demand for payment despite notification from the customer of fraud, forgery or

other defect not apparent on the face of the documents...."

Additionally, the district court incorrectly relied upon language in *Dallas Bank & Trust* for the proposition that the only remedy that account parties such as appellants have regarding the honoring or dishonoring of a draft is to seek an injunction. *See Dallas Bank & Trust,* 686 S.W.2d at 231 (only remedy of account party is to enjoin honoring or dishonoring of draft) (*citing* Tex.Bus. & Comm.Code Ann. § 5.114(b)(2)). The passage in *Dallas Bank & Trust* relied upon by the district court refers to actions available to an account party *prior to* the issuer's payment of the draft. *See* J. White & R. Summers, 2 Uniform Commercial Code § 19–8 p. 65 (§ 5–114( [b] )( [2] ) unavailing to account party after payment; only remedy lies in action for breach of obligation to properly honor draft). Were this otherwise, the "duly honored" requirement of § 5.114(c) would be meaningless, for injunctions serve only to provide prospective relief.

Unfortunately, however, neither *Dallas Bank & Trust* nor *Travis Bank & Trust* provide a clear resolution to the issue at hand. Although we have observed that the right of immediate reimbursement is statutorily contingent upon the issuer duly honoring the beneficiary's draft, we are left with little guidance from the Texas courts as to what "duly honored" means. As indicated, the court of appeals in *Travis Bank & Trust* did not establish a meaningful standard for the term "duly honored" in § 5.114(c) because § 5.114(b)(2) plainly absolves an issuing bank from liability in the situation where it honors a draft despite notice "of fraud, forgery or other defect not apparent on the face of the documents...." If the *Travis Bank & Trust* standard is untenable because § 5.114(b)(2) limits the issuer's duty in honoring a beneficiary's draft to a facial examination of the documents, then the "duly honored" requirement of § 5.114(c), permitting the issuer to have an immediate right of reimbursement, must logically require the issuer to make payment on presentations that conform with the requirements of the letter of credit.[2] This analysis is supported by the language of § 5.109(b)

---

[2]In its brief, appellee contends that the only manner in which appellants may challenge appellee's honoring of the draft in question is by a showing by the account party of the beneficiary's fraud. It cites as authority for this proposition *Phillip Brothers, Inc. v. Old Country*

which states:

### § 5.109. **Issuer's Obligation to Its Customer**

.....

(b) An issuer must examine documents with care so as to ascertain that on their face they appear to *comply with the terms of the credit* but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.

Tex.Bus. & Comm.Code Ann. § 5.109(b) (Vernon 1968) (*emphasis added* ).[3] *See Citizens State Bank of Lometa v. Federal Deposit Insurance Corp.,* 946 F.2d 408, 414 (5th Cir.1991) (issuer's duty to pay arises upon presentation of documents complying with terms of letter of credit); *Banque de Paris,* 828 F.2d at 1125 (issuer bound to pay beneficiary upon presentation of complying documents); *accord Temple–Eastex Inc. v. Addison Bank,* 672 S.W.2d 793, 795 (Tex.1984) (recognizing that beneficiary must strictly comply with terms of letter of credit and citing Texas cases); *Sun Marine,* 797 S.W.2d at 11 (discussing beneficiary's warranty and citing authorities for proposition that beneficiary warrants compliance with terms of credit); Tex.Bus. & Comm.Code Ann. § 5.111(a) (Vernon 1968) (statutory basis of beneficiary's warranty of presentment). We thus hold that under Texas law, an issuer duly honors a draft presented by a beneficiary when the draft complies with the terms of the credit. Requiring an issuer to do any more than this would be contrary to the obligations

*Specialists, Ltd.,* 787 S.W.2d 38, (Tex.1990). *Phillip Brothers* does not support appellee's contention. In that case, the Texas Supreme Court was interpreting § 5.114(b)(2) and in so doing concluded that "[p]resentment may not be enjoined unless there is a showing by the account party of *fraud* by the beneficiary." 787 S.W.2d at 40 (*emphasis in original*). *Phillip Brothers* does not involve a post-payment suit for reimbursement and thus in no way implicates the obligations of an issuer to an account party nor an account party's rights in such a suit.

[3]The commentary to § 5.109(b) indicates that the section recites the basic obligation of the issuer to examine the face of the documents presented. It continues:

The purpose of the examination [of the documents] is to determine whether [they] appear regular on their face. The fact that the documents may be false or fraudulent or lacking in legal effect is not one for which the issuer is bound to examine. His duty is limited to apparent regularity on the face of the documents....

Tex.Bus. & Comm.Code § 5.109(b) commentary at 526 (Vernon 1968).

specifically set forth in the Texas Business & Commerce Code. *See* Tex.Bus. & Comm.Code Ann. § 5.109(b) (Vernon 1968). We additionally hold that an account party, under the plain terms of § 5.114(c) of the Texas Business & Commerce Code, has standing to raise, as a defense to an issuer's claim for reimbursement, the issue of whether the draft was, in fact, duly honored.[4] *See also Banque de Paris,* 828 F.2d at 1124 (issuer who makes payment on nonconforming presentation loses right of repayment from account party); J. White & R. Summers, Uniform Commercial Code § 18–8 at p. 745 (2d ed. 1982) (issuer that wrongfully honors draft generally loses right of reimbursement).[5]

---

[4]We note, additionally, that an issuer may interpose the terms of the reimbursement agreement with the account party as a defense to an allegation of improper honoring. White & R. Summers, 2 Uniform Commercial Code § 19–8 p.66 (3rd ed. 1988). We do not delve into the potential quagmire posed by such inquiry in this case for we conclude the terms of the letter of credit were complied with. We note, however, that in interpreting a reimbursement agreement under Texas law, the terms are frequently construed against the issuer, the party typically responsible for drafting the agreement. *Temple–Eastex Inc.,* 672 S.W.2d at 798.

[5]Appellee suggests that a more recent version of Professors White and Summers' treatise indicates their abandonment of support for the rule that an issuer loses its right of reimbursement in the event it honors a nonconforming presentation. Quite to the contrary, nothing in the Third Edition of White and Summers' treatise suggests that the duty of an issuer to "duly honor" a draft has lost favor in the authors' eyes. As the authors observe:

> Often a customer who gladly procured a letter of credit wishes desperately that it not be paid when the time for payment comes. The customers concern may arise from honorable reasons (for example, because the beneficiary has not complied with the underlying contract). Or it may arise from less honorable reasons (the market has turned and the deal struck is no longer favorable). If the customer is unable to procure an injunction and the issuer pays, the customer is likely to find himself a plaintiff in the ensuing lawsuit against the issuer or the beneficiary. This is because the careful issuer will have procured the customer's funds or other collateral or will simply debit the customer's account when it makes payment on the letter. Unless the customer chooses to pursue the beneficiary on the underlying contract, he will be left with a suit against the issuer because the issuer breached its duty under Article Five or under the reimbursement contract.

> Initially, the customer might argue that there was fraud and therefore there was no right to pay under 5–114. Because of 5–114(2)(b) discussed above this argument will be unavailing.

> *The customers basic argument is that the issuer violated its obligation under 5–109 by paying over documents that did not comply with the credit.*

J. White & R. Summers, 2 Uniform Commercial Code § 19–8 pp. 65–6 (3rd ed. 1988) (*emphasis added*).

> Clearly, Professors White and Summers recognize that the customer, the account party, has the right to raise the issue of the issuer's breach of its obligation to honor only

The district court thus erred when it reasoned that appellants could not assert as a defense appellee's alleged wrongful honoring of the draft presented.

Despite the district court's error, we conclude the granting of summary judgment was proper in this case. The letters of credit[6] provides, in relevant part:

> We hereby establish this irrevocable letter of credit in favor of Sunbelt Savings, 4954 N. O'Conner, Irving, Texas 75062, in the amount of Two Hundred Twenty Seven Thousand, Six Hundred Ninety Five Dollars and no/100 ($227,695.00) in accordance with the application of [appellant]. The maximum sum of $227,695.00 is available to you as provided for herein below.

> A draft under this letter of credit, in an aggregate amount not to exceed $227,695.00, may be drawn and negotiated on or before December 20, 1984, by presenting this letter of credit to us at our counters located at 530 S. Carrier, Parkway, Grand Prairie, Texas, 75051. Partial draws are not permitted.

Appellants contend appellee failed to comply with the terms of the letters of credit because the draft presented was in an aggregate amount exceeding the amount provided for in any individual letter of credit. The draft indicated on its face that it was for letters of credit 008, 009 and 010, numbers corresponding to the numbers of appellants' letters of credit. No affirmative terms appear in the letters prohibiting the proration of the draw among the three letters nor prohibiting the inclusion of the three letters on one draft. *See Travis Bank & Trust,* 660 S.W.2d at 854 (letter of

---

those drafts that comply with the terms of the credit, that is, to duly honor the drafts. As we have noted, the Texas statutes recognize the same right of the customer, as does the case law. It could perhaps be argued that an account party should be required to set forth an independent cause of action for an issuer's breach of duty but we discern no basis for disallowing the issue to be presented in a defensive posture in an action for reimbursement initiated by an issuer.

We finally note that Professors White and Summers' discussion regarding the frequency of success of an account party's cause of action for breach of the duty to properly honor a draft in no way impinges upon the notion that the account party may rely on the law requiring the issuer to fulfill its obligations. *See* J. White & R. Summers, 2 Uniform Commercial Code § 19–8 p. 67 (3rd ed. 1988) (discussing reasons why account party is likely to fail in allegations of issuers breach of duty). Appellee's arguments to the contrary are wholly without merit.

[6]The appellants' letters of credit are identical with the exception of the differing account parties.

credit failed to affirmatively impose condition of payment in particular form). Appellants' argument on this point is without merit.

Appellants next complain that the letters of credit required the presentation of the letters themselves before any drafts would be honored. As indicated above, the letters state that a draft "*may* be drawn ... by presenting this letter...." By use of the word "may", the letters clearly indicate that such presentation was permissive.[7]

Appellants additionally contend that the equal apportionment of the draft between the three letters of credit constituted a partial draw in direct contravention of the express language of the letters of credit prohibiting partial draws. The only summary judgment evidence of the standard industry interpretation of the phrase "partial draws are not permitted" is contained in the affidavit of Al Chapman (Chapman), an employee of New Sunbelt. Chapman's affidavit, although containing the conclusory allegation that he is qualified to testify as an expert, contains sufficient allegations of personal knowledge of the banking industry and, in particular, letters of credit transactions, to permit him to provide competent affidavit testimony as to accepted industry standards.[8] The affidavit provides:

---

[7]It is clear that the letters contain mandatory express conditions in contrast to the permissive condition of the presentation of the letters. For example, the letters state:

> It is an *express condition* of this letter of credit that it *shall be* automatically extended for successive additional periods of one year each, from the initial and each future date unless Independent American Savings of Grand Prarie, Texas ("Bank") *shall notify* Sunbelt Savings at least 60 days prior to an expiration date in writing by registered mail, at the above address, that the Bank elects not to extend the credit for such additional period.

The decision to use the permissive "may" in reference to the necessity of the presentation of the letters of credit was within the issuer's discretion.

[8]Chapman's affidavit states:

> 9. In my work with [New Sunbelt] and other savings and loan organizations, I have had experience dealing with letters of credit. I have been responsible, at various times, for drafting of and payment on letters of credit.

11. The letters of credit in this case contain the clause "partial draws are not permitted.' I am aware that the defendants have asserted herein that such phrase means that the full amount of the letter of credit must be drawn in any draft. This is not the correct interpretation of the clause in conformance with generally accepted industry standards. The generally accepted interpretation in the industry of this clause forbids multiple drafts on a letter of credit and requires that any draft on the letter of credit seek the full amount currently due pursuant to the agreement underlying the letter of credit obligation. The generally accepted interpretation does not require that any draft seek the full amount available under the letter of credit regardless of the amount of the underlying debt. In some cases, such a requirement would require the beneficiary, in order to collect his debt, to improperly draft for amounts in excess of the debt due the beneficiary....

Appellants argue this interpretation is incorrect. In support of their position, appellants offer the affidavit of Jack H. Haese (Haese). Haese' affidavit establishes that he is experienced in the banking industry. However, the affidavit fails to counter the statements of the Chapman affidavit regarding the industry standards set forth in therein. Haese' affidavit provides:

13. The phrase "partial draws are not permitted" or similar phrases are common in standby letters of credit and have a commonly understood meaning in the lending industry. *It is my opinion* that the sentence "Partial draws are not permitted," which appears in each of the letters of credit (Exhibits A, B and C), means that no draft for an amount less than the full amount of the credit available under any of those letters of credit, $227,695.00, would comply with the terms and conditions for a proper draft that could be rightfully honored. Thus a draft for a lesser amount or a proration of the Sunbelt draft among the three letters of credit violates this prohibition. (*emphasis added*).

Significantly, the Haese affidavit makes no mention as to what the accepted industry standard is regarding the interpretation of the phrase at issue. Rather, Haese states that it is *his opinion* that the phrase does not permit a draw for an amount less than that provided for on the face of the letter of credit. Such affidavit testimony fails to create a genuine issue of material fact as to the industry standard. Viewing the evidence in the light most favorable to the appellants, *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), no genuine issue of material fact exists and summary judgment is appropriate.

Finally, appellants contend the district court erred in in its refusal to strike the affidavit of appellee's attorney regarding the award of fees. We have reviewed this contention and find it to be without merit.

### III. The End Result

Having found the district court in error in its understanding of the law of letters of credit, we nevertheless affirm the granting of summary judgment concluding no genuine issue of material fact exists.  Moreover, we have considered the remaining contentions of appellants and find them to be without merit.  The district court's granting of summary judgment is

AFFIRMED.