**MYGSA, S.A. DE C.V., Plaintiff,**

v.

**HOWARD INDUSTRIES, INC., Defendant.**

No. 2:94cv164.

United States District Court, S.D. Mississippi, Hattiesburg Division.

March 15, 1995.

Stephen E. Gardner, James Leon Young, Young, Scanlon & Sessums, Jackson, MS, Jonathan B. Cluck, Kampmann & Church, San Antonio, TX, for Mygsa, S.A. DE C.V.

Richard L. Yoder, Gilchrist, Sumrall, Thaxton & Yoder, Laurel, MS, for Howard Industries, Inc.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before this Court on Motions for Summary Judgment filed simultaneously by both parties. The Court, having reviewed the briefs of the parties, the authorities cited, and being otherwise fully advised in the premises, finds as follows, to-wit:

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff MYGSA, S.A. DE C.V., a Mexican corporation, (hereinafter referred to as MYGSA) entered into two separate contracts with Defendant Howard Industries, Inc., a domestic corporation, (hereinafter referred to as Howard Industries), whereby Howard Industries would manufacture and sell to MYGSA certain electric transformers. The first contract (hereinafter referred to as # 0875) was for several single-phase transformers and the purchase price agreed upon was $60,466.00, while the second contract (hereinafter referred to as # 0878) was for several three-phase transformers and the purchase price was $31,748.00. Both transactions contained three separate documents [1]: a price quote from Howard Industries to MYGSA; a purchase order from MYGSA to Howard Industries; and a letter of credit obtained by MYGSA for the benefit of Howard from Multibanco Comermex NY [2].

MYGSA filed this action on May 6, 1994, alleging that Howard breached both contracts by producing transformers which did not conform to conditions in the contracts. Specifically, MYGSA maintains that Howard Industries did not comply with the provision in the contracts which provided that the transformers would be inspected and approved by the Comision Federal De Electricidad (hereinafter referred to as "CFE").

---

1. In addition to these three documents, there is a document attached as an exhibit to the deposition of Michael Attaway, the corporate representative of Defendant, which appears to be a distribution contract between MYGSA and AEMESA, the Mexican representative of Howard Industries at that time. The document is a very general distribution contract which does not mention any specific orders for transformers. This document is not signed by the MYGSA representative, and the original is written in Spanish. This document is helpful only in that it establishes AEMESA as Defendant's agent and apparently provides that this agent can bind Howard to produce and sell transformers that would be certified by CFE, the Mexican electrical authority.

2. Multibanco Comermex NY is not a party to this action. There is no evidence before this Court that this bank ever actually paid any draft on the letter of credit to Howard.

Howard Industries counterclaimed for the purchase prices of the transformers and asserted that the parties had agreed to amend the letters of credit to dispense with the CFE requirement stated above. Pursuant to the Case Management Order entered by this Court on August 9, 1994, both parties filed simultaneous Motions for Summary Judgment on the issue of contract interpretation.

## II. STANDARD OF REVIEW

■ The Federal Rules of Civil Procedure, Rule 56(c) authorized summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

■ In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light more favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984).

■ The moving party has the duty to demonstrate the lack of genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir.1978). In other words, the "nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts, on unsworn allegations in the pleadings, nor on arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Union Planters Nat'l Leasing v. Woods*, 687 F.2d at 119.

## III. LEGAL ARGUMENT AND ANALYSIS

The arguments of the parties in regards to the Motions before this Court can be broken down into two issues: did the parties agree to modify the underlying contracts to delete the CFE requirements; and to what extent did the parties agree to modify the letters of credit? The parties agree that the Uniform Commercial Code (hereinafter referred to as "UCC") controls these issues[3].

---

**3.** Plaintiff correctly points out that the letters of credit in this case state that they are subject to ICC Revision 1983 Publication 400, which is entitled "Uniform Customs and Practice for Documentary Credits." However, it is unnecessary for this Court to address this document in making its decision in this case.

### A. Modification of the underlying contracts

MYGSA maintains that the letters of credit were separate from the underlying contracts, thus any amendments to the letters of credit did not affect the underlying contracts.[4] Howard Industries asserts that when the letters of credit were amended to delete the CFE requirements, the parties intended that the underlying contracts would be modified.

As stated above, the UCC is applicable to this issue, and the Mississippi version specifically covers letters of credit in Miss.Code Ann. §§ 75–5–101–117 (1972). In most circumstances, the buyer of a product will request that a bank issue a letter of credit on the buyer's behalf in favor of the seller. This situation involves three parties: the buyer or bank customer; the bank or issuing bank; and the seller or beneficiary. The statutes mentioned above cover extensively the duties and obligations which are owed from the issuing bank to its customer and from the issuing bank to the beneficiary. *See* Miss. Code Ann. §§ 75–5–109 and 75–5–114. However, they are silent as to whether the letter of credit is separate and independent from the underlying transaction between the buyer and seller. As a result, this Court must look to applicable case law to determine this issue.

■ The Mississippi Supreme Court has not addressed the relationship between letters of credit and the underlying contracts between the beneficiary and the bank's customer. When the Mississippi Supreme Court has not spoken on an issue of state law, this Court is bound to follow the Fifth Circuit interpretation of state law.

In *Pringle–Associated Mortgage Corp. v. Southern National Bank of Hattiesburg,* 571 F.2d 871 (5th Cir.1978), the Fifth Circuit addressed letters of credit in the light of Mississippi's version of the U.C.C. The court stated:

The district court was in error in construing conditions to exist in the letter of credit on the basis of the underlying agreements between the beneficiary and the bank's customer. The essence of a letter of credit is the promise by a bank, or other issuer, to pay money. The key to the uniqueness of a letter of credit and to its commercial vitality is that the promise by the issuer is independent of any underlying contracts.

*Pringle,* 571 F.2d at 874. The court went on to state that "a court should not resort to those underlying agreements in interpreting a letter of credit." *Id.* This situation involves somewhat of the converse. That is, should an amendment to a letter of credit be construed as also amending the underlying contract?

In *Resolution Trust Corp. v. Kimball,* 963 F.2d 820 (5th Cir.1992), which involved Texas law, the court further discussed the general nature of letters of credit. The court quoted the following language:

[A letter of credit] transaction usually comprises three separate contracts: "[f]irst, the issuing bank enters into a contract with its customer to issue the letter of credit. Second, there is a contract between the issuing bank and the party receiving the letter of credit. Third, the customer who procured the letter of credit signs a contract with the person receiving it, usually involving the sale of goods or the provision of some service."

*Kimball,* 963 F.2d at 822 (citation omitted) (quoting *Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230, 235 (5th Cir.1983)). The Fifth Circuit went on to state that "[a] fundamental characteristic of the structure of the letter of credit transaction is that the three contractual relationships created thereby are separate and independent." *Kimball,* 963 F.2d at 822 (citations omitted).

■ Defendant maintains that the underlying contracts between the parties were

4. This position is taken by Plaintiff in its Rebuttal to Howard's Response in Opposition to MYGSA's Motion for Summary Judgment. However, in Plaintiff's Motion for Summary Judgment, Plaintiff asks for summary judgment only as to Order #0875. As to Order #0878, Plaintiff main-

tained in its Motion that Plaintiff was coerced to amend the letter of credit, and therefore there were genuine issues of material fact as to the legal effect of this amendment. Plaintiff in its Motion for Summary Judgment did not request summary judgment as to Order #0878.

modified by amending the letters of credit to remove the CFE requirements. This argument is contrary to the principles set forth in the above cases. The *Pringle* case states that courts should not look to the underlying contract to interpret the letter of credit. This Court feels that the converse proposition should also be true, unless the process leading up to the amendment of the letter of credit and/or the amendment to the letter of credit itself establishes that the parties intend to amend the underlying contract as well as the letter of credit. It should be noted that there are some public policy reasons why the interpretation of the underlying contract should not control letters of credit that do not necessarily apply to the converse.[5] However, there are reasons why the converse situation should generally be the same.

For example, an amendment to a letter of credit is a transaction or contractual agreement between the issuing bank and the seller. The buyer is not a party to such an amendment. Consequently, an amendment to a letter of credit by itself cannot bind the purchaser for the simple reason that the purchaser is not a party to the amendment. It should be observed, however, that the issuing bank will not likely amend the letter of credit except at the request of its customer. Consequently, the process leading up to the amendment of the letter of credit will obviously have a bearing on whether the underlying contract itself is amended.

Defendant argues that one has to look to the letters of credit in this case, because they are the only documents in the entire transaction which contain the price terms of the sales agreements in question. That is not the case. The price terms were also reflected in both the price quotes from Howard Industries to MYGSA and the purchase orders from MYGSA to Howard Industries, and these documents formed the underlying contracts. The letters of credit did list certain documents which would have to be presented in order for Howard Industries to receive payment. These conditions perhaps mirrored the requirements of the underlying contracts but were not contingent upon performance of those underlying contracts or visa-versa. Therefore, Defendant's argument is unpersuasive in this regard.

■ Based on the above statutory and case authority, this Court finds that an amendment to a letter of credit does not necessarily modify the underlying contract between the buyer and seller as these contracts are generally separate and independent from one another[6]. The real question before this Court is did the parties intend to modify the underlying contracts to delete the CFE requirements? This Court will look to general contract law relative to this question[7].

The Mississippi Supreme Court has stated that "[f]or a subsequent agreement to modify an existing contract, the later agreement must, itself, meet the requirements for a valid contract." *Singing River Mall v. Mark Fields, Inc.*, 599 So.2d 938, 947 (Miss.1992) (citations omitted). Further, the Mississippi Court has stated that:

> A contract of sale may be modified by agreement of the parties as to any of its provisions, terms or conditions, such as the subject matter thereof. This modification may be by oral agreement. The person asserting it has the burden of proof, but on conflicting evidence whether or not a contract of sale has been changed, modified, or replaced by a new agreement ordinarily is a question of fact for the jury.

reaches this conclusion based on general contract and letter of credit law.

---

5. Letters of credit are obtained so that the purchase price is guaranteed by a third party, a bank. The buyer ordinarily will be paid in accordance with the letter of credit, even if there are disagreements between the buyer and seller.

6. This Court has found no case from the Mississippi Supreme Court or the Fifth Circuit which addresses this specific issue or which is sufficiently factually similar to the case at hand to clearly control this case. Accordingly, this Court

7. Section 75–2–209 is the U.C.C. section which concerns modification and waiver of a sales of goods contract. However, reference to that section is not helpful in deciding the issues before this Court, as the situations covered by that section are not the same as the situation before this Court.

*Commercial Credit Corp. v. Long*, 82 So.2d 847, 848 (Miss.1955) (citing 77 C.J.S., *Sales*, §§ 83–87).

Howard Industries is the party asserting that the underlying contracts were modified. As a result, Howard Industries has the burden of proof that these modifications occurred. This Court finds that Howard Industries has not met its burden of proof to establish that there are genuine issues of material fact as to whether the underlying contracts were modified.

In order to reach that conclusion, this Court has reviewed the evidence that was presented by the parties. The primary evidence which must be considered by this Court is the language of the amendments themselves.

The express language of the amended letter of credit in regard to Order # 0878 reads as follows:

> THE *ABOVE MENTIONED CREDIT IS AMENDED* AS FOLLOWS:
>
> 1—QUALITY CERTIFICATE IS NOW HEREBY DELETED
>
> 2—HOWARD INDUSTRIES INC CERTIFIED TEST REPORT IN FOUR COPIES IS NOW REQUIRED
>
> ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(Emphasis added.) This language expressly refers to modifying the letter of credit and does not mention the underlying contract. It further states "all other terms and conditions remain unchanged." Thus, there is no ambiguity. The letter of credit is amended. Nothing else is changed. The underlying contract was not affected.

The language of the amendment to the letter of credit in regard to Order # 0875 is more specific as to what is amended and how:

> THE LETTER OF CREDIT DE-SCRIBED ABOVE HAS BEEN AMEND-ED AS SHOWN BELOW
>
> DOCUMENTARY REQUIREMENT NO. 4 IS NOW DELETED
>
> PROTOTYPE CERTIFICATE AUTHO-RIZED BY COMISION FEDERAL DE ELECTRICIDAD FOR THE EQUIP-MENT RELATED WITH THIS L/C

> (BENEFICIARY WILL FURNISH THIS DOCUMENT IN A THREE MONTHS PERIOD MAXIMUM AFTER INVOICE DATE)
>
> TEST REPORT CERTIFICATE IN FOUR COPIES ISSUED BY HOWARD INDUSTRIES INC IS NOW RE-QUIRED
>
> *ALL OTHER TERMS AND CONDI-TIONS OF THE CREDIT REMAIN THE SAME.*

(Emphasis added.) Again, this language refers solely to the letter of credit. All other "terms and conditions" of the letter of credit are reaffirmed. The term "BENEFICIA-RY" found in the amendment refers to Defendant Howard. The amendment does not mention the underlying contract or the provision in that contract which required CFE certificates. Defendant argues that this amendment does not even require the CFE certificate in 90 days. Why then was the 90 day term put in the amendment? Clearly, the letter of credit was amended to give Defendant 90 additional days in which to get the certificate. Defendant argues that the fact that Defendant sought to obtain the CFE certificate was only a good will gesture, and it was not contractually required. This amendment did not say that Defendant will try; it said "beneficiary (Howard Industries) *will* furnish." It clearly requires that the certificate still be obtained, but allows Defendant an additional 90 days to do so. Defendant's argument on this point does not have credibility.

In addition to the language of the amendments themselves, both parties provided this Court with depositions, copies of letters and facsimiles exchanged between the parties, and affidavits from representatives of the respective corporations involved in this case. Under Miss.Code Ann. § 75-2-202 (1972), parol evidence is not admissible to contradict the express terms of an agreement. However, this section provides for exceptions to this general rule. That is, the express terms of an agreement may be explained or supplemented by (1) course of dealing, (2) usage of trade, or (3) course of performance. Miss. Code Ann. § 75-2-202(a). By definition,

these three exceptions do not apply to the facts in this case.[8]

■ Parol evidence "may be introduced only to clarify ambiguities in the written contract, not to contradict and alter the express contract provisions." *General Plumbing & Heating v. American Air Filter Co.*, 696 F.2d 375, 378 (5th Cir.1983) (construing Mississippi's version of U.C.C.); *see also, Goldberg v. Lowe*, 509 F.Supp. 412, 421–22 (N.D.Miss.1981) (holding that parol evidence inadmissible unless contract is ambiguous).[9] This Court finds that the express language of the amendments is not ambiguous. Based on the express language of the amendments, this Court finds that the underlying contracts between the parties in this case were not modified and there is no genuine issue of material fact in this regard.

■ In the alternative, even if this Court had concluded that the language of the contracts was ambiguous and thus under general contract law had considered the parol evidence offered by the parties, there still does not exist a genuine issue of material fact as to the issue of whether the underlying contracts were modified. Again, it should be pointed out that Howard carries the burden of proof to show the underlying contracts were amended. Howard cannot do this by simply establishing that it wanted to, or tried to, amend the underlying contracts. Even if Howard had produced evidence that it thought that the underlying contracts were

amended, that would not be sufficient. In order to establish that there is a genuine issue of material fact as to whether or not the underlying contracts were amended, Howard would have to produce some evidence that Plaintiff agreed to the amendment of the underlying agreements. This Howard has not done.

Almost all of the documentary evidence relates to amending the letters of credit only. In fact, there are only two documents that indicate even an attempt on the part of Defendant Howard to amend the underlying contracts. In Mike Attaway's letter of October 8, 1991, to Mr. Michel, Mr. Attaway clearly pointed out the differences between CFE standards and ANSI standards and asked Mr. Michel to agree that the transformers would be built not to CFE standards but to ANSI standards. Clearly, this letter applies not only to the letters of credit but to the underlying contracts as well. That letter concluded "if this unit is okay, please initial in the space provided and return a copy to me to authorize construction. This is the unit with the same variations that was quoted to AEMESA." This letter concluded by giving Mr. Michel a blank space in which to signify his approval of this change, as follows:

"_____

Approved for construction

( ) with prototype

( ) without prototype"

---

8. Section 75–1–205 defines usage of trade as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." Clearly, the "usage of trade" exception does not apply in this case.

In § 75–1–205, course of dealing is defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Course of dealing deals with conduct between the parties prior to the transaction at hand. *See Mid–South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1123 (5th Cir. 1985). As a result, the course of dealing exception does not apply in this case.

Section 75–2–208 states that "[w]here the contract for sale involves repeated occasions for performance by either party with knowledge of

the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." By the express language of this section, course of performance deals with contracts which provide for several "occasions for performance." The contracts in the case at hand did not deal with such a situation. As a result, the evidence provided by the parties in this case does not fit under the U.C.C. definition of course of performance.

9. Section 2–208 of the U.C.C. supports this proposition by providing that when there is a conflict between the express language of the contract and/or the three types of evidence mentioned above, then the "express terms shall control course of performance, and course of performance shall control both course of dealing and usage of trade." Miss.Code Ann. § 75–2–208(2) (citation omitted).

There is absolutely no evidence that Mr. Michel ever initialed this letter or gave his approval of this change in any manner whatsoever.

The second document in which Defendant sought to get the underlying contracts amended was Mr. Attaway's facsimile to Mr. Michel dated October 25, 1991, in which he expressed fear as to whether or not CFE would ever issue a permit or prototype certificate on the transformers to be furnished. In that facsimile, Mr. Attaway poised this question to Mr. Michel, "Can we drop the prototype certificate requirement ...?" Since this question is not limited to the letters of credit, the Court assumes that Defendant was inquiring if the CFE certificate requirement could be removed from both the letters of credit and the underlying agreements. The record is absolutely devoid of any indication that Mr. Michel ever responded directly to this facsimile of October 25, 1991. These are the only two pieces of documentary evidence that this Court found in the record even indicating an effort on Defendant's part to amend the underlying contracts as contrasted to the attempts to amend the letters of credit. There is no documentary evidence whatsoever to show that Plaintiff ever agreed to amend the underlying documents.

Another clear indication that the CFE certificates were still required is Mr. Michel's response to Mr. Scotty Sumrall's letter of November 22, 1991. On November 22, 1991, Mr. Sumrall sent a fax to Mr. Michel. The memo stated, "[t]his memorandum is to acknowledge to you that prototypes for the units listed below will be *submitted for testing* by CFE within three months time." (Emphasis added.) The next day Mr. Michel faxed a memorandum back to Mr. Sumrall which stated "there is a misunderstanding: I *need in order I can be able to change the credit letters, as Mike asked me, a letter-compromise* of having prototypes (authorized by C.F.E.) in three more months." Mr. Michel was making the point that the certificates had to be obtained within three months, not that the prototypes had to be submitted to CFE for testing within three months.

Additional proof of the 90 day "compromise" is Mr. Attaway's letter to Mr. Michel of October 14, 1991, in which he stated "as we agreed, the prototypes will not be ready for these units *in time* to issue a Quality Certificate." (Emphasis added.) Again, this language indicates that the concern of Howard Industries expressed to Mr. Michel was not that the certificates should not be required, but that they did not have *"time"* to obtain them before delivery or before they were to receive their money under the letters of credit. In Mr. Attaway's facsimile of October 28, 1991, he requests that the expiration date of the letter of credit be extended to May 1, 1992, because of the quality certificate requirements. In this transmittal, Mr. Attaway assured Mr. Michel that the prototype testing was to begin soon. On November 11, 1991, Mr. Attaway again faxed Mr. Michel a letter which expressed concern about amending the "letter of credit" and again assured "we are to begin testing these prototypes very soon." Again, Mr. Attaway expressed Howard's concern that they get their *payment* in "an orderly fashion." Again, no mention is made of amending the underlying contract. On November 13, 1991, Mr. Attaway again transmitted a fax to Mr. Michel wanting to change only the "letter of credit." To the same effect is Mr. Attaway's transmittal of November 15, 1991.

In Mr. Attaway's letter to Mr. Michel of December 5, 1991, he advised Mr. Michel that they had written to the CFE laboratory requesting the certificates "in three months." In Mr. Sumrall's letter to the CFE of December 5, 1991, again Howard stated "we request that CFE test these transformers and provide a prototype certificate within three months." On December 6, 1991, Mr. Attaway sent a letter to Mr. Michel advising that Howard would soon submit to the CFE laboratory the transformers to be tested, stating "we have requested that testing be completed and the prototype certificates furnished within three months."

These later letters and facsimiles which were exchanged between the parties (after the Defendant's correspondence to Plaintiff dated October 8, 1991, and October 25, 1991) focused only on amending the letters of cred-

it. They do not mention the underlying contracts. Likewise, in Mr. Michael Attaway's affidavit of November 1, 1994, in which he would have had ample time to think about what he was going to say and would have had advice of counsel, he refers only to amending the letters of credit and not once in this affidavit does he mention amending the underlying agreements.

The only evidence that even comes close to suggesting that the Plaintiff agreed to amend the underlying agreements is a portion of the excerpt of the deposition of Mr. Attaway provided by Defendant. In that portion he was asked if he did not agree that the language in the amendment to Order # 0875, which provided that the prototype certificate authorized by Comision Federal De Electricidad would be furnished in ninety days, was consistent with correspondence between the parties. In response to that question, Mr. Attaway testified, "No, sir, I disagree with that. All of our phone calls, conversations, and correspondence had been to eliminate the requirement of a prototype certificate." Mr. Attaway's testimony in this instance was not consistent with the actual copies of most of the correspondence. As previously pointed out, there were only two of these documents that indicated Howard's desire to completely eliminate the CFE requirement. Even in this instance, Mr. Attaway did not state that Mr. Michel ever agreed to delete the CFE requirement from the underlying agreements.

Further in his deposition, Mr. Attaway was asked if Mr. Sumrall's correspondence to

CFE did not give defendant three months to get the quality certificate. Mr. Attaway responded, "Well, we were asking for that time frame [10] and also, there was a lot of phone calls involved between Mr. Michel and I talking about needing to have that requirement dropped so that we would be able to produce the transformers." Again, Mr. Attaway did not say that Mr. Michel ever agreed to delete entirely the CFE requirement, that is to delete it from the underlying agreements. Howard Industries has failed to produce any evidence which indicates that Plaintiff agreed to amend the underlying contracts.

Even if Howard had produced a conclusory statement that Plaintiff agreed to these amendments, the Fifth Circuit has held on numerous occasions that "conclusory allegations supported by a conclusory affidavit will not suffice to require a trial." *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir.1986) (citation omitted).

Defendant Howard's problem in this case is simple. Howard gave Plaintiff quotes for transformers, one quote with CFE certification and one quote without CFE certification.[11] Plaintiff by purchase orders accepted Defendant's offer to sell transformers with CFE certificates required. That constituted a contract.[12] From that point forward, Howard was obligated to obtain the CFE certificates, unless there was a valid amendment to delete this requirement.

Based on the foregoing, this Court finds that Howard Industries has not met its burden of proof that there exist genuine issues

**10.** This testimony of Mr. Attaway is entirely contrary to Defendant's position that the amendment as to Order # 0875 totally eliminated the need for CFE certification.

**11.** Even if Howard had not quoted a price for transformers without the CFE certification, that would be of no effect. Once Howard made an offer by quoting transformers with a CFE certificate and Plaintiff accepted by forwarding its purchase order to Howard, the contracts were completed.

**12.** Although somewhat evasive, Defendant in its briefs clearly acknowledges that the CFE certificates were required in the underlying contracts. Somewhere along the way, Howard determined that getting CFE approval was going to be difficult. Then Mr. Attaway, on Howard's behalf, on numerous occasions advised Plaintiff that How-

ard would not produce the transformers unless Plaintiff amended the letters of credit. Howard simply did not have the right to unilaterally amend the contract or to say in effect to Plaintiff "you must agree to amend the contract or we will not build the transformers." Difficulty of performance does not do away with a contract. In law, one's word, once given for a valuable consideration, is binding.

It appears that Howard's then Mexican representative, who had a written contract making him Howard's agent, may well have given a quote providing for the CFE certificates without Howard intending him to make such a quote. However, that is of no consequence, since Howard admits that the underlying contracts required CFE certificates.

of material fact as to whether the underlying contracts were modified.[13]

## B. Modification of the letters of credit [14]

■ A review of the amendments to the letters of credit reveals that the letters were in fact modified. The parties are not in dispute as to this issue. However, the parties do disagree as to the meaning of the amendments. Howard Industries takes the position that the CFE requirement was deleted in both of the letters of credit, while MYGSA asserts that as to Order # 0875 the requirement was merely delayed for three months.

As to Order # 0878, the express language of the amendment states that the letter of credit is amended to delete the CFE quality certificate requirement and to require Howard Industries' certified test report in four copies before the letter of credit would be honored. There is no evidence before this Court which would indicate any other interpretation of this language. As a result, this Court finds that the letter of credit as to Order # 0878 was amended to delete the CFE requirement and to replace that requirement with Howard Industries' certified test reports. However, it should be pointed out that the issuing bank is not a party to these proceedings and as indicated above, the underlying contracts were not amended.

As to Order # 0875, the express language of the amendment provides that Documentary Requirement No. 4, which is the quality certificate requirement, is deleted and that

test report certificates from Howard Industries are now required. However, between these two provisions is an additional statement which reads, "PROTOTYPE CERTIFICATE AUTHORIZED BY COMISION FEDERAL DE ELECTRICIDAD FOR THE EQUIPMENT RELATED WITH THIS L/C (BENEFICIARY WILL FURNISH THIS DOCUMENT IN A THREE MONTHS PERIOD MAXIMUM AFTER INVOICE DATE)." Obviously, the parties had some difficulty in communicating in this case because of the language barrier involved. But, this language is not ambiguous. It clearly obligated Howard Industries to furnish CFE certificates within three months after the invoice date. There is no evidence before this Court which indicates any other interpretation.

Correspondence and other documents which have been provided to this Court support this interpretation. For example, on an internal document of Howard Industries entitled "Mexican Order Status" prepared by Michael Attaway, marketing manager for Howard Industries, there is a notation in a column marked "Status" for Order # 0875 which reads "owe prototype certi[ficate] 3 months from date o[f] shipment." (Emphasis added.) As MYGSA points out, the word "owe" leads to the conclusion that Mr. Attaway was indicating that Howard Industries was obligated to provide the CFE certificates.

As a result of the express language of the amendments to the letters of credit, this

---

**13.** Plaintiff in its Motion for Summary Judgment maintains that it was coerced into amending Order # 0878 and therefore that such amendment was a nullity. In its final rebuttal brief, Plaintiff seems to abandon this position and argues that the amendment to the letter of credit did not amend the underlying contract. The Court finds Plaintiff's later position to be correct. But, since Plaintiff made no motion for summary judgment as to Order # 0878, it cannot obtain that relief at this time. If this Court had found it necessary to reach the position first taken by Plaintiff in its Motion for Summary Judgment, the Court would find that there is a genuine issue of material fact as to whether Plaintiff was coerced into making this amendment because of economic duress. The Court would find that there is a genuine issue of material fact as to whether or not Howard threatened to do something which it had no legal right to do (that is,

not manufacture the transformers which it had contractually agreed to manufacture with the CFE certificate) and that this wrongful threat caused Plaintiff to enter into an agreement against its free will. *Kelso v. McGowan*, 604 So.2d 726 (Miss.1992).

**14.** In this section of the Opinion concerning the amendments to the letters of credit, this Court will apply the same legal analysis mentioned above in the section on the modifications of the underlying contracts concerning the consideration of parol evidence. However, it should be noted that the U.C.C. § 2–202 cited above concerning parol evidence probably does not apply to the separate *letters of credit contracts* as they are not contracts which involve the *sale* of goods of $500.00 or more. Nevertheless, the same legal principles apply.

**634**

Court finds that Howard Industries was not required to produce the CFE certificates as contemplated by the original letters of credit at the time of shipping the transformers or submitting the drafts under the letters of credit. However, as to the amendment to Order # 0875, Defendant was obligated to deliver those CFE certificates within three months after the date of invoice. This Court finds that there do not exist genuine issues of material fact in this regard which would preclude a grant of summary judgment.

Plaintiff only asked for summary judgment as to Order # 0875. For that reason, Plaintiff will be granted summary judgment as to Order # 0875, but not as to Order # 0878.

Based on the above stated findings, it is unnecessary for this Court to address any other arguments put forth by the parties.

### IV. CONCLUSION

For the reasons stated above, this Court makes the following findings:

1) The actions taken by the parties in this case in amending the letters of credit for Orders # 0875 and # 0878 did not effectively amend the underlying contracts which required CFE certification.

2) The parties did effectively amend the letter of credit for Order # 0878. In so doing, as to Order # 0878, the CFE requirement was deleted from the letter of credit, and Howard Industries was not required to obtain this certification as a condition of payment under the letter of credit. However, certification was still required under the underlying contract. Since Plaintiff did not ask for summary judgment on this issue and since parol evidence will be necessary to determine when the certificate was required, summary judgment will not be given as to Order # 0878.

3) The parties effectively amended the letter of credit pertaining to Order # 0875. Howard Industries was obligated to provide MYGSA with their own certified test results at the time of delivery and to obtain the CFE certification within three months after the invoice date.

As a result of the foregoing, Howard Industries Motion for Summary Judgment against MYGSA as to all issues should be and is hereby DENIED. MYGSA's Motion for Partial Summary Judgment against Howard Industries should be and hereby is GRANTED to the extent set out above.

SO ORDERED AND ADJUDGED.